905 P.2d 202

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**Andrew M. VALENCIA and Oralia Medina, both individually and as next friends of Andrew J. Medina and Judy A. Medina, minors, and Anita Trinidad, individually and as next friend of David Trinidad, a minor, Defendants–Appellants.**

No. 16446.

Court of Appeals of New Mexico.

Aug. 15, 1995.

Certiorari Denied Oct. 19, 1995.

Bill Shoobridge, Hobbs, Robert Trenchard, Jr., Trenchard & Buckingham, L.L.P., Roswell, for Defendants–Appellants.

William P. Lynch, Atwood, Malone, Mann & Turner, P.A., Roswell, for Plaintiff–Appellee.

*OPINION*

DONNELLY, Judge.

1. This case poses a question of first impression before this Court regarding the interpretation of NMSA 1978, Section 66–5–301(B) (Repl.Pamp.1994)—the underinsured motorist provision of New Mexico's uninsured/underinsured motorist statute—in situations involving multiple claimants. Appellants, Andrew M. Valencia and Oralia Medina, both individually and as next friends of Andrew J. Medina and Judy A. Medina, minors, and Anita Trinidad, individually and as

next friend of David Trinidad, a minor, appeal from an order granting summary judgment to State Farm Mutual Automobile Insurance Company (State Farm) in a declaratory judgment action which held that Appellants were not entitled to recover underinsured motorist coverage. For the reasons discussed herein, we reverse.

*FACTS*

2. The dispute between the parties arose out of an automobile accident that occurred on July 31, 1992, near Abilene, Texas. The vehicle driven by Andrew Valencia was struck by a vehicle driven by Linda Stewart. Andrew Valencia and his passengers, Oralia Medina, Andrew Medina, Judy Medina, Anita Trinidad, and David Trinidad all received injuries as a result of the accident.

3. State Farm had previously issued motor vehicle insurance policies to both Stewart, Valencia, and Oralia Medina. Stewart carried liability insurance with policy limits of $25,000 per person and $50,000 per occurrence. Andrew Valencia and Oralia Medina had purchased uninsured motorist insurance with limits of $25,000 per person and $50,000 per occurrence.

4. Andrew Valencia and Oralia Medina, both individually and as next friends of Andrew Medina and Judy Medina, minors, and Anita Trinidad filed a negligence action against Stewart in Winkler County, Texas. It is undisputed that the July 31, 1992, motor vehicle accident was proximately caused by the negligence of Stewart. State Farm paid Stewart's liability limits of $50,000 to settle all claims against Stewart. A third party who was not joined in the Texas suit was paid $1,000 by State Farm in settlement of that party's claims against Stewart. Each of the Appellants, with the exception of David Trinidad, received in settlement varying amounts of the remaining $49,000 from Stewart's State Farm liability policy. The individual settlements were as follows: Andrew Valencia, $13,828.80; Oralia Medina, $10,942.70; Andrew Medina, $3,876.90; Judy Medina, $2,906.60; and Anita Trinidad, $17,445. David Trinidad received nothing under the settlement.

5. Following the settlement of the Texas suit, Appellants herein made demand on State Farm under their own policy for underinsured motorist benefits for themselves and the minor children. Appellants contend their actual injuries and medical expenses exceeded the amount of any recovery by them from Stewart's policy. State Farm refused to pay, claiming Stewart was not an underinsured motorist within the meaning of Section 66–5–301(B). Thereafter, State Farm filed a declaratory judgment action in the District Court of Lea County, where Appellants reside, naming Appellants as defendants. After service was obtained upon Appellants, State Farm moved for summary judgment. Following a hearing, the district court granted State Farm's motion for summary judgment and determined as a matter of law that Stewart was not an underinsured motorist under New Mexico law.

*DISCUSSION*

6. The dispositive question posed here is whether, when there are multiple claimants whose total damages exceed the amount of insurance coverage available under a tort-feasor's liability coverage, Section 66–5–301(B) should be read to mean that the tort-feasor is underinsured only when the limits of his or her liability coverage are less than the injured parties' uninsured motorist coverage, or that the tort-feasor is underinsured when the amount of the tort-feasor's liability coverage that is actually made available to the injured insureds is less than the limits of their uninsured motorist coverage. We determine that the latter interpretation applies in such situation.

7. When interpreting a statute, the Court seeks to discern the legislature's intent. *Hammonds v. Freymiller Trucking, Inc.,* 115 N.M. 364, 367, 851 P.2d 486, 489 (Ct.App. 1993). Construction of a statute is a question of law which an appellate court reviews de novo. *See Duncan v. Kerby,* 115 N.M. 344, 347–48, 851 P.2d 466, 469–70 (1993) (questions of law reviewed de novo); *Madrid v. University of Cal.,* 105 N.M. 715, 718, 737 P.2d 74, 77 (1987) (statutory construction is question of law). Insurance policies are controlled for reasons of public policy by the statutory provisions in force at the time the policies are issued. *See Townsend v. State*

*ex rel. State Highway Dep't,* 117 N.M. 302, 304, 871 P.2d 958, 960 (1994) (contract incorporates the relevant law in force at time of its creation); *Schmick v. State Farm Mut. Auto. Ins. Co.,* 103 N.M. 216, 218, 704 P.2d 1092, 1094 (1985) (insurance policy incorporates under-insured motorist statute regardless of whether mentioned in the policy); *Bauer v. Bates Lumber Co.,* 84 N.M. 391, 393, 503 P.2d 1169, 1171 (Ct.App.) (public policy requires that statute prevail over insurance policy where there is conflict), *cert. denied,* 84 N.M. 390, 503 P.2d 1168 (1972); *see also AIG Hawaii Ins. Co. v. Estate of Caraang,* 74 Haw. 620, 851 P.2d 321, 328 (1993) (statutory requirement in effect when policy is issued is read into insurance policy with full binding effect).

8. Section 66–5–301(B) provides:

The uninsured motorist coverage described in Subsection A of this section shall include underinsured motorist coverage for persons protected by an insured's policy. *For the purposes of this subsection, "underinsured motorist" means an operator of a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability under the insured's uninsured motorist coverage....* [Emphasis added.]

9. Appellate courts in other jurisdictions that have undertaken to interpret applicable state uninsured/underinsured motorist statutes, where there are multiple claimants whose damages exceed the amount of insurance coverage available under a tort-feasor's liability coverage, have reached differing results. One line of authority, relying principally upon applicable state statutory provisions, follows a narrow interpretation holding

that underinsurance motorist coverage does not apply in a multiple-claimant situation where the tort-feasor has automobile insurance in an amount equal to or in excess of the uninsured/underinsured limits of the injured persons. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Messinger,* 232 Cal.App.3d 508, 283 Cal.Rptr. 493, 496 (Ct.App.1991); *Cossitt v. Federated Guar. Mut. Ins. Co.,* 541 So.2d 436, 439–43 (Miss.1989); *Tyler v. New Jersey Auto. Full Ins. Underwriting Ass'n,* 228 N.J.Super 463, 550 A.2d 168, 170 (1988); *see also Lick v. Dairyland Ins. Co.,* 258 N.W.2d 791, 793 (Minn.1977)[1]; *Vigneault v. Travelers Ins. Co.,* 118 N.H. 75, 382 A.2d 910, 914 (1978).

10. Other courts have adopted a less restrictive interpretation of the applicable statutory provision in their jurisdictions governing uninsured/underinsured motorist coverage in multiple-claimant situations. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Diem,* 358 So.2d 39, 40–41 (Fla.Dist.Ct.App.1978); *Palisbo v. Hawaiian Ins. & Guar. Co.,* 57 Haw. 10, 547 P.2d 1350, 1354–55 (1976); *American States Ins. Co. v. Estate of Tollari,* 362 N.W.2d 519, 522 (Iowa 1985); *Butler v. MFA Mut. Ins. Co.,* 356 So.2d 1129, 1132–33 (La. Ct.App.), *writ denied,* 358 So.2d 641 (1978); *Gabriel v. Minnesota Mut. Fire & Casualty,* 506 N.W.2d 73, 78 (N.D.1993); *Savoie v. Grange Mut. Ins. Co.,* 67 Ohio St.3d 500, 620 N.E.2d 809, 815 (1993)[2]; *Stracener v. United Servs. Auto. Ass'n,* 777 S.W.2d 378, 379–80 (Tex.1989); *see also Gonzales v. Millers Casualty Ins. Co.,* 923 F.2d 1417 (10th Cir.1991) (construing New Mexico law); *Pristavec v. Westfield Ins. Co.,* 184 W.Va. 331, 400 S.E.2d 575, 578 (1990). *See generally* 8C John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 5071.45 (Supp.1994).

11. Examination of the above cases reveals wide disagreement among courts which

1. The rule articulated in *Lick* was superseded by statute in 1974 when Minnesota enacted its No-Fault Automobile Insurance Act. Under the 1974 Act, underinsured motorist benefits were recoverable to the extent that damages exceeded the tort-feasor's liability limit thus providing additional protection for the party with underinsured motorist coverage. For a historical perspective of the changes in Minnesota's underinsured motorist statute, *see Kothrade v. American*

*Family Mut. Ins. Co.,* 462 N.W.2d 413, 415 (Minn.Ct.App.1990).

2. In response to *Savoie,* Ohio's uninsured/underinsured motorist coverage statute was amended in part to declare that underinsured motorist coverage should be offset by the amount available for payment from the tort-feasor's liability coverage. *See* Ohio Rev.Code Ann. § 3937.18(A)(2) (Baldwin 1995).

have addressed this issue. The result reached by appellate courts in each case has been largely influenced by the wording of each state's particular insurance statutes. *See* Lee R. Russ, Annotation, *Uninsured and Underinsured Motorist Coverage: Recoverability, Under Uninsured or Underinsured Motorist Coverage, of Deficiencies in Compensation Afforded Injured Party by Tort-feasor's Liability Coverage*, 24 A.L.R.4th 13 (1983 & Supp. Sept. 1994).

12. In *Gonzales* the Tenth Circuit Court of Appeals was confronted with the precise issue presented here and, relying in part upon the holding of our Supreme Court in *Schmick*, concluded that New Mexico's uninsured/underinsured motorist statute should be liberally construed to implement the purpose of the statute. *Gonzales*, 923 F.2d at 1423. The *Gonzales* court held that the meaning of Section 66–5–301(B) is not self-evident in multiple-claimant situations and recognized that restricting an insured to the policy limits of the tort-feasor's liability coverage, "rather than the liability proceeds actually available to a given insured [under his or her own policy], would tend to produce the illogical ... situation the legislators sought to avoid." *Gonzales*, 923 F.2d at 1422. We agree.

13. As stated in *Schmick*, and reaffirmed in *Foundation Reserve Insurance Co. v. Marin*, 109 N.M. 533, 535, 787 P.2d 452, 454 (1990), our uninsured/underinsured motorist statute "must be liberally construed to implement the purpose of compensating those injured through no fault of their own." *Schmick*, 103 N.M. at 219, 704 P.2d at 1095. We think *Gonzales* correctly interpreted Section 66–5–301(B) and is consonant with legislative intent in enacting legislation to protect injured motorists in multiple-claimant situations. Similarly, as observed in Appleman, *supra*, Section 5071.45:

Based on the policy of fully protecting and compensating persons injured by negligent motorists, the amount of recovery under uninsured/underinsured motorist coverage has been considered the difference between the injured person's actual damages and the amount available from the tortfeasor's liability insurance, up to the injured person's uninsured/underinsured motorist coverage limits.

14. In sum, we hold that in multiple-claimant situations, insured motorists who are covered under an uninsured/underinsured motorist policy and who suffer from injuries resulting from an automobile accident are entitled to collect up to the limit of their underinsurance policy to the extent that their damages exceed the amounts that the tort-feasor's insurer has previously paid to them.

## CONCLUSION

15. The order of the district court granting summary judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

16. IT IS SO ORDERED.

WECHSLER and BUSTAMANTE, JJ., concur.