WILKIE v AUTO-OWNERS INSURANCE COMPANY

Docket No. 217919. Submitted November 8, 2000, at Lansing. Decided May 1, 2001, at 9:05 A.M. Leave to appeal sought.

Kay Wilkie, as personal representative of the estate of Paul K. Wilkie, and Janna L. Frank brought an action in the Clinton Circuit Court against Auto-Owners Insurance Company, seeking underinsured motorist insurance benefits. Paul Wilkie died and Frank was seriously injured in an automobile accident when their automobile was struck by an automobile driven by Stephen Ward. Kay Wilkie and Frank each received $25,000 from the insurer of Ward's vehicle under a policy with a single liability limit of $50,000. The plaintiffs each sought $75,000 under an Auto-Owners policy with underinsured motorist coverage limits of $100,000 a person and $300,000 an accident. It was not disputed that the plaintiffs' actual damages exceeded the $100,000 a person limit of Auto-Owners' coverage. The court, Jeffrey L. Martlew, J., granted summary disposition for the plaintiffs. The defendant appealed, claiming that each plaintiff was entitled to only $50,000 under the terms of the defendant's underinsured motorist insurance provisions.

The Court of Appeals *held*:

1. The defendant's policy provides that the defendant's limit of liability for underinsured motorist coverage shall not exceed the amount by which the underinsured motorist coverage limits exceed the total limits of all bodily injury liability bonds and policies available to the owner or operator of the underinsured automobile and that the limit of liability for underinsured motorist coverage is not increased because of the number of claims made, suits brought, or persons injured. The defendant's policy is ambiguous in that it could, as the defendant argued, be interpreted to require that the Ward policy limit ($50,000) be set off against each plaintiff's underinsured motorist insurance claim, or it could, as the plaintiffs argued, be interpreted to require that only the amount actually received by each plaintiff ($25,000) be set off against each plaintiff's underinsured motorist insurance claim. Because ambiguous terms in an insurance policy must be construed against the drafter and in favor of the insured, the defendant's policy must be interpreted to require that only the amount actually received by each

plaintiff from the insurer of the underinsured motorist be set off against each plaintiff's underinsured motorist insurance claim against the defendant.

2. The defendant's interpretation of its policy is inconsistent with the rule of reasonable expectation, which requires a court determining the existence or extent of insurance coverage to examine whether the policyholder, upon reading the insurance contract, was led to reasonably expect coverage. An insured under the underinsured motorist provisions of the defendant's policy could reasonably expect that the limits of underinsured motorist coverage would be available to the insured, less the amount received from the underinsured motorist.

Affirmed.

INSURANCE — AUTOMOBILES — UNDERINSURED MOTORIST COVERAGE — POLICY LIMITS — MULTIPLE CLAIMS.

Multiple claims under an automobile insurance policy for underinsured motorist coverage for a single automobile accident are each subject to a setoff in the amount received by the respective claimant from the automobile insurer of the underinsured motorist where the underinsured motorist provisions state that the limit of liability for underinsured motorist coverage shall not exceed the amount by which the underinsured motorist coverage limits exceed the total limits of all bodily injury liability bonds and policies available to the owner or operator of the underinsured automobile and that the limit of liability for underinsured motorist coverage is not increased because of the number of claims made, suits brought, or persons injured.          .

*Thomas A. Doyle,* for Kay Wilkie.

*Street, Grua, Maire & Young, P.L.C.* (by *Jonathan E. Maire*), for Janna Frank.

*Reeves & Jones, P.C.* (by *Donald L. Jones*), for the defendant.

Before: DOCTOROFF, P.J., and HOEKSTRA and MARKEY, JJ.

MARKEY, J. In this underinsurance-benefits case involving multiple claimants, defendant appeals by right the stipulation and final judgment entered by the

trial court in favor of plaintiffs against defendant in the amount of $75,000 for each plaintiff. The stipulation expressly provides that defendant may appeal the trial court's earlier order granting plaintiffs' motion for summary disposition. We affirm.

This case involves an underinsured motorist insurance coverage dispute arising from a motor vehicle accident. Plaintiff Janna Frank was driving a vehicle in which Paul Wilkie was a passenger when a vehicle driven by Stephen Ward crossed the center line and collided with their vehicle. Both Ward and Wilkie were killed in the collision, and Frank was seriously injured. The Ward vehicle was insured by Citizens Insurance Company under a policy that had a $50,000 single limit of liability, which was split equally between the two plaintiffs. Defendant Auto-Owners Insurance Company insured the Wilkie vehicle under a policy that provided underinsured motorist coverage, with policy limits of $100,000 a person, not to exceed $300,000 total.

There is no dispute that each plaintiff's damages exceeded the coverage amount. Defendant asserted that it owed each plaintiff $50,000, consisting of the $100,000 policy limit minus the $50,000 coverage of the Ward policy. Plaintiffs asserted that defendant owed each of them $75,000 because they equally split the Ward policy proceeds of $50,000 (i.e., $100,000 policy limit under defendant's policy minus the $25,000 received under Ward's policy equals $75,000). The trial court granted plaintiffs' motion for summary disposition, finding that only the amount actually received by each plaintiff ($25,000), and not the entire policy limits ($50,000), should be set off against the amount available to each plaintiff under the underin-

sured motorist coverage provision. After a review de novo of the trial court's grant of summary disposition to plaintiffs, *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998), we conclude that the trial court properly granted plaintiffs' motion for summary disposition.

Underinsured motorist coverage is not required by law, but is offered as an option by a number of insurance companies. Because such insurance is not mandated by statute, the scope, coverage, and limitations of underinsurance protection are governed by the insurance contract and contract law. *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 525; 502 NW2d 310 (1993); *Mate v Wolverine Mut Ins Co*, 233 Mich App 14, 19; 592 NW2d 379 (1998). Contract language is to be given its ordinary and plain meaning, and technical and constrained constructions should be avoided. *Bianchi v Automobile Club of Michigan*, 437 Mich 65, 71, n 1; 467 NW2d 17 (1991). The determination whether contract language is ambiguous is a question of law subject to review de novo on appeal. *Farm Bureau Mut Ins Co of Michigan v Nikkel*, 460 Mich 558, 563; 596 NW2d 915 (1999). An insurance contract is clear if it fairly admits of but one interpretation. *Id.* at 566, quoting *Raska v Farm Bureau Mut Ins Co of Michigan*, 412 Mich 355, 362; 314 NW2d 440 (1982). An insurance contract is ambiguous if, after reading the entire contract, its language can be reasonably understood in differing ways. *Farm Bureau, supra*, quoting *Raska, supra*. Ambiguous terms in an insurance policy must be construed against the drafter and in favor of the insured. *Clevenger v Allstate Ins Co*, 443 Mich 646, 654; 505 NW2d 553 (1993).

Concomitant with the rules of construction is the rule of reasonable expectation. When determining the existence or extent of coverage under the rule of reasonable expectation, a court examines whether a policyholder, upon reading the contract, was led to reasonably expect coverage. *Gelman Sciences, Inc v Fidelity & Casualty Co*, 456 Mich 305, 318; 572 NW2d 617 (1998), quoting *Vanguard Ins Co v Clarke*, 438 Mich 463, 472; 475 NW2d 48 (1991), quoting *Powers v DAIIE*, 427 Mich 602, 623; 398 NW2d 411 (1986). If so, coverage will be afforded. *Fire Ins Exchange v Diehl*, 450 Mich 678, 687; 545 NW2d 602 (1996). Conversely, when determining the priority of coverage, the insurers' reasonable expectations should be accommodated. *Bosco v Bauermeister*, 456 Mich 279, 300-301; 571 NW2d 509 (1997).

The policy section at issue provides in relevant part:

2. COVERAGE

a. *We* will pay compensatory damages any person is legally entitled to recover:

(1) from the owner or operator of an *underinsured automobile*;

\*     \*     \*

4. LIMIT OF LIABILITY

a. *Our* Limit of Liability for Underinsured Motorist Coverage shall not exceed the lowest of:

(1) the amount by which the Underinsured Motorist Coverage limits stated in the Declarations exceed the total limits of all *bodily injury* liability bonds and policies available to the owner or operator of the *underinsured automobile*; or

\*     \*     \*

b. The Limit of Liability is not increased because of the number of

\*     \*     \*

(2) claims made or *suits* brought;
(3) persons injured . . . . [Emphasis in original.]

In this case, each plaintiff submitted a claim that exceeded the $100,000 a person limitation under the policy issued by defendant. As plaintiffs explain, defendant's exposure was thus $200,000. Examining the policy language at issue, the primary question in this case is what is the limit of the policy available to the owner or operator of the underinsured automobile. The limit of that policy was $50,000, which was split equally between the two plaintiffs in this case. Defendant would treat the $50,000 as the limit available in regard to "each" plaintiff. However, defendant's interpretation of the policy provisions would allow it to benefit from a credit not received by plaintiffs. Another interpretation of the policy language at issue, as found by the trial court, is that only the amount actually received by each plaintiff ($25,000) from the insurance coverage available to Ward, and not the entire Ward policy limit ($50,000), should be set off against the amount available to each plaintiff under the underinsured motorist coverage provision in the policy issued by defendant. While defendant argues that the provision contained in section b of its policy (i.e., that the limit of liability is not increased because of the number of claims made, suits brought, or persons injured) supports its claim, this provision is more appropriately applied to the policy limits indicated in the endorsement of defendant's policy. Defendant's liability is limited to $100,000 a person,

and $300,000 total, and cannot be increased by the number of claims made, suits brought, or persons injured. Because the policy language in question can be interpreted in at least two ways, we conclude that it is ambiguous and should be construed against defendant, the insurer. *Clevenger, supra.*

In addition, defendant's position is inconsistent with reasonable expectations of coverage. *Diehl, supra.* An insured could reasonably expect that the policy limits of the underinsured motorist coverage would be available to him, less the amount received from the underinsured motorist. No one can predict with certainty how much coverage will be available from an underinsured motorist. The premium amount for the underinsured coverage was the same as the premium amount for uninsured coverage, and the same policy limits applied to both coverages. The reasonable expectation would be that the insured has contracted to have the amount of the policy limits available to him, whether paid by the underinsured motorist, or by the insured's policy.

Further, contrary to defendant's assertion, the Michigan cases defendant relied on do not support its position that the insurance policy language clearly and unambiguously provides that the applicable limit for the claim is $50,000. In *Nankervis v Auto-Owners Ins Co*, 198 Mich App 262, 263; 497 NW2d 573 (1993), the plaintiff had a policy with an underinsured motorist coverage limit of $25,000 a person. The plaintiff was struck by a vehicle whose driver had a policy with a limit of $20,000 a person. After the plaintiff collected $20,000 from the insurer of the other vehicle, she sought to collect the $25,000 policy limit on her underinsured motorist coverage with the defen-

dant, claiming that her actual damages exceeded the amount that she received from the tortfeasor's insurer by more than $25,000. This Court rejected the plaintiff's argument, concluding that the setoff provisions in the insurance policy were not ambiguous. *Id.* at 265. The Court stated:

> Defendant's maximum liability for underinsured coverage is limited to the difference between its insured's coverage and the other motorist's coverage, provided that its insured's damages exceed the amount of the other motorist's coverage. That is, any benefits due shall be reduced by all amounts paid by the driver's insurer. [*Id.* at 265-266.]

The present case is distinguishable from *Nankervis*. Unlike *Nankervis*, plaintiffs in this case are not claiming that the amount they actually received from the underinsured driver's insurer should not be offset against their recovery from defendant. Rather, the question presented in this case involves the applicability of the setoff clause in the underinsured motorist provision where the claimant can receive only a portion of the liability policy proceeds because there are multiple claimants. Thus, any reliance on *Nankervis* is misplaced.

Defendant's reliance on *Auto-Owners Ins Co v Leefers*, 203 Mich App 5; 512 NW2d 324 (1993), is also misplaced because *Leefers* actually supports affirmance of the trial court's decision in the present case. In *Leefers*, Phyllis Leefers was killed and Jauron Leefers and Keysha Cash sustained serious injuries when their vehicle was struck by a vehicle owned and operated by Josh Prather, who was insured by State Farm Insurance Company. *Id.* at 7. The limits of the State Farm policy were $50,000 a person and $100,000 an occurrence, with the estate of Phyllis Leefers

receiving $50,000, Jauron Leefers receiving $10,000, and Keysha Cash receiving $40,000. *Id.* Leefers' policy contained a provision for underinsured motorist benefits of $300,000 an occurrence. *Id.* at 7-8. It was undisputed that the State Farm policy did not adequately cover the damages of each claimant. *Id.* at 7. As a result, Keysha Cash, who also was insured by Auto-Owners under a policy issued to her grandfather, Arthur Hall, sought to obtain underinsured benefits under that policy, which also contained a provision for underinsured motorist benefits of $300,000 an occurrence. *Id.* at 8. Auto-Owners argued that it was not liable to pay under the grandfather's policy on the basis of language in the exclusion stating that "coverage shall not apply . . . if the owner has insurance similar to that afforded by this coverage and such coverage is available to the insured . . . ." *Id.*

This Court in *Leefers* determined that, while the term "available" was ambiguous because it could be construed in different ways, it "agree[d] with those jurisdictions . . . that have construed the term to mean that which is 'actually' or 'reasonably' available to the insured." *Id.* at 11-12. However, even though this Court construed the term "available" against the insurer, it concluded that "Cash has failed to establish that the underinsured motorist benefits under the Leefers policy were not 'actually' or 'reasonably' available to her under the facts of this case, such that the exclusion under the Hall policy would be inapplicable." *Id.* at 12.

Defendant claims that *Leefers* is distinguishable from the instant case because the policy language in *Leefers* stated "available to the insured," while the policy language in the present case states "available

to the owner or operator" of the underinsured vehicle. Thus, defendant claims that what is "available" to plaintiffs is what Ward was entitled to under the policy, namely, $50,000 in underinsured benefits. However, we agree with plaintiffs that defendant's claim rests on a "distinction without a difference" because "what is 'available' to the insured is the same thing that is 'available' to the tortfeasor." Here, what is "available" to each plaintiff is not the "theoretically or hypothetically available" amount of $50,000, *Leefers*, *supra* at 11, but, rather, what was "actually" or "reasonably" available to each plaintiff, the amount of $25,000, which each actually received from the insurer of the Ward vehicle. Thus, contrary to defendant's claim, the reasoning in *Leefers* supports affirmance of the trial court's decision.

Finally, cases from other jurisdictions support the trial court's decision in the present case.[1] In *Gust v Otto*, 147 Wis 2d 560, 563-564; 433 NW2d 286 (Wis App, 1988), the underinsured motorist coverage con-

---

[1] In addition to the cases we will discuss, several other decisions from other jurisdictions also support the instant trial court's decision. See *State Farm Mut Automobile Ins Co v Valencia*, 120 NM 662, 665; 905 P2d 202 (NM App, 1995) ("in multiple-claimant situations, insured motorists who are covered under an uninsured/underinsured motorist policy and who suffer from injuries resulting from an automobile accident are entitled to collect up to the limit of their underinsurance policy to the extent that their damages exceed the amounts that the tort-feasor's insurer has previously paid to them"); *Austin Mut Ins Co v King*, 29 F3d 385 (CA 8, 1994) (in an accident involving multiple claimants, the setoff provision contained in the underinsured motorist coverage of the insurer's policy reducing the insurer's "limit of liability" by the amounts already recovered from the tortfeasor's insurer referred to the policy's $50,000 a person limit, rather than the policy's $100,000 an accident limit that would have reduced the victims' recovery to zero even though the insureds had paid a premium for underinsurance coverage); *Francis v Travelers Ins Co*, 581 So 2d 1036, 1043 (La App, 1991) (the insurer is not entitled to a credit against coverage for the entire amount of the liability limits of the tortfeasor where multiple claimants shared in the liability proceeds).

tained a clause similar to that in the policy in this case, stating that "the limits of liability for Underinsured Motorists coverage shall be reduced by the total limits of all Bodily Injury Liability insurance policies applicable to the person or persons legally responsible for such damages . . . ." An additional clause in the policy stated that "the company's obligation hereunder shall apply only to such damages that are in excess of the total limits of all Bodily Injury Liability insurance policies applicable to the person or persons legally responsible for such damages and available to cover the insured's damages . . . ." *Id.* In *Gust*, various occupants of a vehicle with underinsured motorist coverage having a single limit of $500,000 were injured in an automobile accident caused by another driver's negligence, whose liability insurance had a policy limit of $300,000. *Id.* at 562-563. After the tortfeasor's insurer distributed the $300,000 to the various claimants, several of the claimants, who received about $248,000 of the $300,000, but whose actual damages were determined to be $479,000, sought to recover underinsured motorist benefits. As in this case, the defendant insurer claimed that its underinsured motorist coverage must be reduced by the total limits of all bodily injury liability available under the tortfeasor's policy, namely, $300,000. *Id.* at 564. Construing the underinsured motorist provision in the policy, the Wisconsin Court of Appeals found that the clauses in the policy created an ambiguity that should be construed against the insurer. *Id.* at 565. The Court of Appeals then rejected the insurer's claim that the amount available to the claimants was not the policy limit of $300,000, but rather, "the amount available for the insured's

damages," or $248,000, and that the insurer was "entitled to reduce its underinsured motorist coverage only by the portion of the total bodily injury limit specifically available to cover the insured's damages." *Id.* The Wisconsin Court of Appeals determined that to adopt the insurer's interpretation "would allow itself to benefit from a credit not received by its insured" and that "[t]he most equitable reading of the policy requires [the insurer] to reduce their underinsured motorist coverage by the amount of their insured's underlying recovery . . . ." *Id.*

*Goughan v Rutgers Casualty Ins Co*, 238 NJ Super 644; 570 A2d 501 (1989), which is factually similar to the instant case, also supports affirmance of the trial court's decision. In *Goughan,* the two plaintiffs had underinsured motorist coverage with limits of $100,000 a person and $300,000 an accident. *Id.* at 645. The plaintiffs were involved in a motor vehicle accident caused by the other driver, who was covered by a liability policy with limits of $15,000 a person and $30,000 an accident. *Id.* The passenger in the vehicle of the other driver was also injured, and he settled his claim with the tortfeasor's insurer for $15,000, leaving $15,000 of the tortfeasor's coverage available to the two plaintiffs. *Id.* As in the present case, the underinsured motorist insurer claimed a $30,000 credit against recovery by the plaintiffs, who claimed that the credit was limited to $15,000, the amount that they actually received. *Id.* The New Jersey court rejected the insurer's claim, interpreting the relevant state statute to require reduction of liability for underinsured motorist coverage by the tortfeasor's "full available policy limit" to mean that coverage in a multiple claimant context should be

reduced only by what a particular claimant actually received from the tortfeasor's insurer, which, in *Goughan*, amounted to $15,000, not $30,000. *Id.* at 649.

*Gonzales v Millers Casualty Ins Co of Texas*, 923 F2d 1417 (CA 10, 1991), also supports the trial court's decision in the present case. In *Gonzales*, Claro Gonzales and two other passengers were injured, and Tomasa Gonzales was killed, when Claro Gonzales' vehicle was struck by a vehicle driven by Michael Woehrl, whose negligence was the proximate cause of the accident. *Id.* at 1418. Woehrl had liability coverage of $100,000 an occurrence, which was distributed evenly among the four claimants, with each receiving $25,000. *Id.* The plaintiffs, Claro Gonzales and the personal representative of Tomasa Gonzales' estate, who each claimed damages in excess of $25,000, sought compensation under the underinsured motorist provisions of Claro Gonzales' insurance policy, which insured Claro and Tomasa Gonzales each for $75,000 against bodily injury or death caused by an underinsured motorist. *Id.* When the insurer denied further liability, the plaintiffs filed a declaratory action, arguing that they were each entitled to $50,000 in liability coverage. *Id.* The district court ruled that the plaintiffs could look to the insurer to compensate them under the underinsured motorist policy provisions for any additional loss, subject to the coverage limits, or $50,000. *Id.* at 1419. On appeal, the Tenth Circuit Court of Appeals, interpreting a New Mexico underinsured motorist coverage statute, affirmed the judgment of the district court, holding that underinsured motorist recovery in a multiple claimant context was determined by the amount of liability pro-

ceeds actually available to the injured insured, rather than the face amount of the tortfeasor's policy. *Id.* at 1422-1423.

In summary, because of the ambiguity in the defendant's insurance policy and the fact that an insured reading the contract would reasonably expect coverage under the circumstances of this case involving multiple claimants, we hold that the amount actually received by each plaintiff and not the entire policy limits should be set off against the amount available to each plaintiff under the underinsured motorist coverage provision. The trial court properly granted summary disposition in favor of plaintiffs.

We affirm.