No. 87,263

DUANE HALSEY, individually and as representative of the heirs of the estate of Norma Jean Halsey, deceased, *Appellee*, v. FARM BUREAU MUTUAL INSURANCE CO., INC., *Appellant*.

61 P.3d 691

Opinion filed January 24, 2003.

*Don D. Gribble II*, of Hite, Fanning & Honeyman, L.L.P., of Wichita, argued the cause and *Vince P. Wheeler*, of the same firm, was with him on the briefs for appellant.

*Craig Shultz*, Law Office of Craig Shultz, P.A., of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Three passengers died and four other passengers were injured in a Chevrolet Suburban when it collided with a tractor-trailer. After recovery from the tortfeasor, the husband of a deceased passenger brought suit against his insurance carrier, Farm Bureau Mutual Ins. Co., Inc. (Farm Bureau), to recover the difference between his recovery from the tortfeasor and his actual damages in underinsured motorist (UIM) coverage. Farm Bureau denied coverage because his UIM policy limits of $500,000 was less than the tortfeasor's limits of liability coverage of $1,000,000. Based upon the provisions of K.S.A. 40-284(b) and public policy, the trial court concluded that Halsey was entitled to UIM coverage. Farm Bureau appeals, and we reverse and remand with directions.

Facts

On August 20, 1997, in Wilson County, Kansas, a collision occurred between a Chevrolet Suburban owned by Paul and Peggy Winter and driven by Robert Pauly and a tractor-trailer owned by D&G Trucking and driven by Larry Holmes. The accident was the result of the negligence of both Holmes and Pauly. Norma Jean Halsey was a passenger in the Chevrolet Suburban and died as a result of injuries she sustained. Two other passengers, Isadore Devlin and Marcelline Weber, also died in the accident, and four other passengers, Addie Lang, Lotus Leddy, Kim Friess, and Agnes Ast, suffered injuries.

Heirs of the deceased, including the plaintiff Duane Halsey, the surviving spouse of Norma Jean Halsey, in addition to those passengers surviving, recovered damages through an interpleader action under a $1,000,000 single limit liability policy with Wilshire Insurance Company (Wilshire), which insured D&G Trucking and its driver Larry Holmes. Duane Halsey's proportionate share of Wilshire's $1,000,000 limit was $103,699.04.

Pauly, the driver of the Chevrolet Suburban, had two insurance policies with Patrons Insurance Company (Patrons) on the date of the accident—a personal policy and a business policy. The net ef-

fect of Pauly's two policies provided liability coverage limited to $300,000 per occurrence. The stipulated facts indicated that "[n]one of the occupants of the vehicle Mr. Pauly was driving, nor any representatives on their behalf, filed a claim with or against Patrons . . . concerning alleged negligence of Mr. Pauly."

The Winters, owners of the Chevrolet Suburban, had a liability policy also with Farm Bureau with a $300,000 per accident limit. Based upon its policy with the Winters, Farm Bureau paid its limits of $300,000. Halsey received $40,741.68 under the Winters' Farm Bureau policy.

Halsey's policy with Farm Bureau provided liability coverage limited to $500,000 per person and $500,000 per occurrence. Thus, Halsey's policy contained uninsured (UM) and UIM benefits of $500,000 per person and $500,000 per occurrence. See K.S.A. 40-284(a) and (b). Farm Bureau paid Halsey personal injury protection (PIP) benefits of $31,000.

Halsey filed this present suit against Farm Bureau to collect UIM benefits for his damages which exceeded the combined benefits he recovered under the Wilshire policy and the benefits he recovered under the Winters' Farm Bureau policy.

Farm Bureau denied UIM benefits to its insured under its policy and under K.S.A. 40-284(b) because the UIM limits of $500,000 were less than the liability limits of $1,000,000 under the tortfeasor's liability policy. Farm Bureau moved for summary judgment.

The district court accepted the following stipulations of the parties: 80% of the fault for the accident should be assessed to Holmes and the remaining 20% to Pauly; Halsey's total damages were in the amount of $581,235.11; and Holmes' share of the liability for Halsey's damages after applying the statutory cap for wrongful death was $304,988.09. After subtracting (1) Halsey's share of the benefits under the Wilshire policy of $103,699.04 and (2) PIP benefits paid attributable to the negligence of Holmes of $24,800, Halsey remained uncompensated for damages caused by Holmes in the amount of $176,489.05.

The district court also adopted the following stipulations of the parties: Pauly's share of Halsey's damages based upon his percentage of fault after applying the statutory cap for wrongful death

was $76,247.02. After subtracting (1) Halsey's pro rata share of the Winters' $300,000 policy limit of $40,741.69, (2) Halsey's assumed pro rata collection from Pauly's $300,000 policy limit of $40,741.68, and (3) the PIP benefits paid attributable to the negligence of Pauly of $6,200, Halsey would be fully compensated as to the damage caused by Pauly's negligence, with $11,436.34 remaining. Because the PIP offset as to Pauly's negligence ($6,200) did not reduce the amount actually received by Halsey, that amount was used to further reduce the amounts Farm Bureau owed Halsey with respect to Holmes' negligence. Thus, Halsey, if UIM coverage exists under his Farm Bureau policy, would be entitled to UIM benefits of $170,289.05.

Following oral arguments on Farm Bureau's summary judgment motion, the district court denied Farm Bureau's motion, making the following findings from the bench:

"I'm going to rule that the public policy in this state is that contracted for uninsured or underinsured motorist coverage is to allow the purchase of that insurance to, quote, fill the gap and have that person be protected up to the level of their own coverage if the tortfeasor is underinsured or uninsured.

"Where that underinsured or uninsured coverage fails to give the injured motorist that protection, the public policy is defeated. The rulings of this Court, in my judgment in interpreting that statute, is to give effect to the intent of that legislative enactment. And I think to grant the motion for summary judgment would not do that, it would do the opposite. I'm going to overrule the motion for summary judgment for those reasons."

The trial court entered judgment for Halsey against Farm Bureau for UIM benefits of $170,289.05. Farm Bureau appeals.

Our jurisdiction is based upon a transfer under K.S.A. 20-3018(c).

## Standard of Review

Whether UIM coverage is available to Halsey under Farm Bureau's policy involves an interpretation of K.S.A. 40-284(b) and construction of the Farm Bureau policy. The interpretation of a statute as well as the construction of a written insurance policy based upon stipulated facts are questions of law subject to unlimited review. *Cashman v. Cherry*, 270 Kan. 295, 298, 13 P.3d 1265 (2000); *Colfax v. Johnson*, 270 Kan. 7, 10, 11 P.3d 1171 (2000).

## Coverage Under K.S.A. 40-284(b)

K.S.A. 40-284(b) provides for and requires UIM coverage:

> "Any uninsured motorist coverage shall include an underinsured motorist provision which enables the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injury or death to which the insured is legally entitled from the owner or operator of another motor vehicle with coverage limits equal to the limits of liability provided by such uninsured motorist coverage to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle."

Whether the above statutory language requires UIM coverage under the facts of this case involves a construction of the above statutory language. The fundamental rule of statutory construction to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained. *Mitchell v. Liberty Mut. Ins. Co.,* 271 Kan. 684, 694, 24 P.3d 711 (2001). The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be. 271 Kan. at 694-95.

Farm Bureau argues that application of the plain and unambiguous language of K.S.A. 40-284(b) to the undisputed facts of this case results in a conclusion that no UIM coverage exists for Halsey. Farm Bureau's UIM coverage in this case is in the amount of $500,000, and the limits of the bodily injury coverage provided by Wilshire insuring the defendants, D&G Trucking and Larry Holmes, is in the amount of $1,000,000. According to the terms of K.S.A. 40-284(b), Farm Bureau argues that UIM coverage would exist only "to the extent such coverage [$500,000] exceeds the limits of the bodily injury coverage [$1,000,000] carried by the owner or operator of the other motor vehicle." Farm Bureau concludes, therefore, that since its UIM coverage is less that the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle, no UIM coverage exists for Halsey.

Halsey argues that our interpretation of K.S.A. 40-284(b) must consider the use of the word "coverage" and Kansas case law, par-

ticularly those cases calling for a liberal interpretation of the provisions of K.S.A. 40-284(b) "to provide broad protection to the insured against all damages resulting from injuries sustained by the insured that were caused by an automobile accident and arose out of the ownership, maintenance or use of the insured motor vehicle." *Jones v. Automobile Club Inter-Insurance Exchange,* 26 Kan. App. 2d 206, 208, 981 P.2d 767, *rev. denied* 268 Kan. 847 (1999). More importantly, Halsey argues that in accordance with *Rich v. Farm Bur. Mut. Ins. Co.,* 250 Kan. 209, 824 P.2d 955 (1992), this court should consider the legislative intent behind the requirement that insurers provide such mandatory coverage: "This coverage is intended to provide recompense to innocent persons who are damaged through the wrongful conduct of motorists who, because they are uninsured or underinsured and not financially responsible, cannot be made to respond in damages." 250 Kan. at 215.

Halsey argues that UIM benefits should be owing when the UIM coverage exceeds the actual amount of damages recovered from the tortfeasor. Because of the number of claims against the tortfeasor's policy in this case, the amount Halsey recovered from the tortfeasor was less than Halsey's UIM coverage. According to Halsey's argument, UIM coverage is to fill this gap and provide for coverage in such cases.

The issue in this case, highlighted by the respective arguments of the parties, is whether the language in K.S.A. 40-284(b), "limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle," refers (1) to the actual benefits received by the insured claimant under the tortfeasor's policy (limits-to-recovery comparison) or (2) to the limits on the face of the tortfeasor's policy (limits-to-limits comparison). If the language requires a limits-to-recovery comparison, Farm Bureau owes its insured Halsey UIM benefits because the amount actually received from the tortfeasor ($103,699.04) is less than Halsey's UIM coverage ($500,000). On the other hand, if the language requires a limits-to-limits comparison, Farm Bureau owes its insured Halsey nothing because the limit of the tortfeasor's policy ($1,000,000) is greater than the limits of the insured's policy ($500,000).

Kansas Law Interpreting K.S.A. 40-284(b)

K.S.A. 40-284(b) has been in effect without amendment since 1981. L. 1981, ch. 191, sec. 1. The first Kansas appellate decision interpreting this statute in a similar factual setting was *State Farm Mut. Auto Ins. Co. v. Cummings,* 13 Kan. App. 2d 630, 778 P.2d 370 (1989). *Cummings,* like the present case, involves both a multi-party settlement through interpleader and a UIM policy with coverage limits which did not exceed the limits on the face of the tortfeasor's policy. In *Cummings,* the UIM claimants Lisa Vest, Angie Vest, and Bradley Vest were occupants in a car driven by Charles Pinnell. The car was owned by Vivian Vest Pinnell and driven by Charles Pinnell. Angie, Lisa, and Charles were injured, and Bradley died in the accident. The tortfeasor was Charlene Purcell, and the car she was driving was owned by James Cummings. Fault was evenly divided by stipulation between Purcell and Cummings based on negligence in Purcell's case and negligent entrustment in Cummings' case. Purcell carried liability insurance limited to $50,000 per person and $100,000 per occurrence. Cummings had no liability insurance.

The UIM claimants were insured under Pinnell's policy with UIM benefits identical to the tortfeasor's coverage—$50,000 per person and $100,000 per occurrence. The UIM claimants settled with the tortfeasor Purcell's insurance carrier for amounts less than their actual damages and sought UIM coverage for the balance of their actual damages.

*Cummings* noted that the liability coverage of the tortfeasor's vehicle did not cover the claimants' actual damages. Emphasizing that K.S.A. 40-284(b) required UIM benefits to the extent that the limits of the insured's liability coverage exceeds those of the tortfeasor's vehicle, *Cummings* affirmed the trial court's denial of UIM benefits, finding that the limits of Purcell's policy and Pinnell's policy were the same. 13 Kan. App. 2d at 638. *Cummings* concluded:

"In determining whether underinsured motorist coverage is available [under K.S.A. 40-284(b)], two steps must be satisfied: (1) The opposing party's liability coverage must be below the claimant's liability coverage, and (2) the claimant must have damages in excess of the opposing party's liability coverage. In this

case, step one cannot be satisfied. The liability coverage provided to the driver of the offending vehicle was not below appellants' liability coverage, but was equal to it. Both steps must be satisfied and, in the case of appellants only step two applies and no underinsured motorist coverage is available." 13 Kan. App. 2d at 639.

*Cummings* acknowledged that the result may appear harsh but noted that the minimum requirements dictated by K.S.A. 40-284(b) had not been met by the UIM claimants and to impose further liability would impose a risk upon the insurers that had not been bargained for and for which the insurer had not been compensated. 13 Kan. App. 2d at 639.

*Cummings* interpreted K.S.A. 40-284(b), holding that the plain and unambiguous language of the statute provides that UIM coverage exists only in cases where the claimant/insured has UIM limits which are greater than the tortfeasor's liability coverage. If upon comparison, the limits of the tortfeasor's coverage are greater than the limits of the claimant's UIM coverage, no UIM coverage exists. Thirteen years have passed since the decision in *Cummings,* and the legislature has not amended the law to ameliorate what *Cummings* referred to as the appearance of a harsh result. "When the legislature fails to modify a statute to avoid a standing judicial construction of that statute, the legislature is presumed to agree with the court's interpretation." *In re Adoption of B.M.W.,* 268 Kan. 871, 881, 2 P.3d 159 (2000)

Application of the holding in *Cummings* to the case we now consider would require this court to reverse the decision of the trial court. Halsey's UIM coverage of $500,000 does not exceed the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle. Halsey fails to satisfy the first test adopted in *Cummings.* Halsey argues that the language in *Cummings* involved more than reference to the word "limits." According to Halsey, the actual holding states that UIM coverage exists if the coverage in the policy "exceeds the limits of the liability coverage in effect on the driver of the other vehicle." Halsey argues that the coverage terminology and the reference to that coverage which is "in effect," should not be overlooked.

However, there is no indication in *Cummings* that K.S.A. 40-284(b) would allow UIM recovery in circumstances where the claimant's UIM coverage limit was equal to or less than the liability limit on the face of the tortfeasor's policy. *Cummings* concludes that the plain and unambiguous language of K.S.A. 40-284(b) allows coverage for UIM benefits "to the extent" that the insured's applicable UIM coverage limit "exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle." Coverage exists only when UIM limits are greater than the coverage limits of the tortfeasor. Thus, according to *Cummings*, the statute calls for a limits-to-limits comparison in determining whether UIM coverage exists, which is the first test adopted in that opinion. 13 Kan. App. 2d at 638-39.

*Jones v. Automobile Club Inter-Insurance Exchange*, 26 Kan. App. 2d 206, 981 P.2d 767, *rev. denied* 268 Kan. 847 (1999), considered a slightly different situation. Joan Coffman Jones, Everetta Burris, and Terry Burris were injured following a collision with a car driven by Alvin Barrett. A passenger in Barrett's vehicle was also injured. Barrett was totally responsible for the accident. Barrett's liability policy provided benefits for $25,000 per person and $50,000 per occurrence. Jones' UIM benefits were limited to $50,000 per person and $100,000 per accident. Thus, application of step one in *Cummings* did not prevent UIM coverage because the UIM limits in *Jones* exceeded the tortfeasor's liability limits.

The passenger in Barrett's vehicle settled with Barrett's insurer for $7,000, leaving $43,000 for Jones, Everetta Burris, and Terry Burris. Jones received $7,826, Terry Burris received $31,261, and Everetta Burris received $3,913. Because Jones' actual damages amounted to $20,682.15, she attempted to collect the difference between her damages and the amount received from Barrett's insurer under her own UIM provisions. The trial court ruled that Jones was not entitled to UIM benefits because her damages were less than the per person limits under Barrett's liability policy.

The Court of Appeals reversed, finding that since *Cummings* does not state whether it is the tortfeasor's per occurrence or per person limit which applies to determine whether the injured person is an underinsured motorist, the case was not dispositive on

the issue of whether Jones was entitled to UIM benefits. The court found that K.S.A. 40-284(b) "should be liberally construed to provide broad protection of the insured against all damages resulting from injuries sustained by the insured that were caused by an automobile accident and arose out of the ownership, maintenance, or use of the insured motor vehicle." 26 Kan. App. 2d at 208.

*Jones* noted that the statute referred to limit in the plural, not in the singular. The court concluded with the following: "Accordingly, either the per person or the per occurrence limit may apply. Whether the per person or the per occurrence liability limit applies will depend on which limit impairs the insured's ability to receive compensation from the other motorist." 26 Kan. App. 2d at 209. Thus, *Jones* concluded that while the plaintiff's damages did not exceed the tortfeasor's $25,000 per person limit, the tortfeasor's $50,000 per occurrence limit, which was exceeded, was applicable, and Jones was held to have a UIM claim. The court remanded the case with instructions for the district court to determine the actual damages of Terry Burris and Everetta Burris to eliminate any potential for collusion between Jones, Terry Burris, and Everetta Burris. 26 Kan. App. 2d at 209.

Farm Bureau correctly points out that the net effect of *Jones* was to modify the second prong of the *Cummings* test in cases involving group settlements. *Jones* was based upon its ability to interpret the provisions of K.S.A. 40-284(b) in its use of the word "limits." After *Jones*, even though a UIM claimant's damages do not exceed the tortfeasor's per person liability limit coverage, a UIM claim arising from a group settlement will not be impeded by step two of *Cummings* as long as the tortfeasor's occurrence limit is exceeded by the total damages of all injured parties. *Jones* did not deal with the first test announced in *Cummings*. See *Cummings*, 13 Kan. App. 2d at 639.

We reject Halsey's attempts to expand the reasoning of Jones to affect the first prong of the *Cummings* test. While some of the language used in *Jones* may seem to support Halsey's position in this case, *Jones* does not deal with the first step in *Cummings*. Language in the *Jones* decision such as "Jones' claim against AAA should be calculated as the difference between her pro rata share

of the settlement and the total value of her damages" and language from the *Jones* syllabus that "[u]nder the facts of this case that involves a group settlement with the tortfeasor, the underinsured motorist provider is responsible for paying the difference between the insured's pro rata share of the settlement and the total amount of damages up to the insured's underinsured liability limits," 26 Kan. App. 2d at 206, Syl. ¶ 7, assumes the existence of a UIM claim under *Cummings'* first step and alters the second step of *Cummings.* Thus, the above language provides no support for the conclusion that UIM coverage exists in the case we now consider.

This court in *Cashman v. Cherry,* 270 Kan. 295, 13 P.3d 1265 (2000), interpreted the provisions of K.S.A. 40-284(b) in a case involving facts similar to those in *Jones*. However, again, *Cashman* did not deal with step one of the *Cummings* test; rather, the main thrust in *Cashman,* as in *Jones*, was step two of the *Cummings* test.

Mandi Cashman and her parents Arnold and Donna Cashman were injured when their car collided with a car driven by Margery Cherry. Cherry was charged with 85% of the fault, and Donna was charged with the remaining 15% of the fault. Cherry had liability insurance with a $50,000 per person limit and a $100,000 per occurrence limit. The Cashmans had UIM benefits with a $100,000 per person limit and a $300,000 per accident limit. The district court found that Mandi's damages attributable to Cherry's negligence amounted to $40,539.91. Arnold's damages attributable to Cherry's negligence were $101,348.76. The Cashmans settled with Cherry and her insurance carrier for the $100,000 per occurrence limit and apportioned the settlement as follows: $50,000 to Arnold, $25,000 to Donna, and $25,000 to Mandi. Mandi claimed UIM benefits in the amount which her damages of $40,539.91 exceeded the $25,000 she received under the settlement with Cherry's liability insurance carrier. The district court held that Mandi was not entitled to UIM benefits as her damages ($40,539.91) were not in excess of Cherry's per person liability limit ($50,000).

In *Cashman,* we were faced with a group settlement similar to that in *Jones*. Like *Jones*, the plaintiff was able to satisfy the first step of *Cummings,* but the plaintiff was denied UIM coverage based on the fact that the plaintiff's damages were less than the

tortfeasor's per person liability limit. At the time of the district court decision in *Cashman, Jones* had not yet been decided. When *Cashman* reached this court, we cited *Jones* and permitted the recovery of UIM benefits on the grounds that in group settlements, *Jones* had altered step two of the *Cummings* test, permitting recovery where the insured's damages are uncompensated, either because the per person limit or the per occurrence limit is exceeded. In that regard, we said that *Jones* trumps *Cummings*. 270 Kan. at 296. We specifically indicated in *Cashman* that the principal issue for review was the lower courts' denial of benefits based upon the second prong of *Cummings*. See 270 Kan. at 299.

Halsey cites the recent case of *O'Donoghue v. Farm Bureau Mut. Ins. Co.,* 30 Kan. App. 2d 626, 49 P.3d 22 (2002), to support his claim that UIM benefits are due in this case. A petition for review was filed with this court in *O'Donoghue* which we subsequently granted. Pursuant to Rule 8.03(i) (2002 Kan. Ct. R. Annot. 56), *O'Donoghue* has no precedential value.

Both of the insureds in *Jones* and *Cashman* met the first step of the analysis discussed in *Cummings.* In both cases, the UIM coverage exceeded "the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle." K.S.A. 40-284(b). It follows, then, that nothing in *Jones* and *Cashman* changed the first step of the *Cummings* analysis.

### Other Jurisdictions

Halsey and Farm Bureau cite authorities from other jurisdictions. Resolution of similar cases more often than not turns upon the applicable statutory or policy language. See *Dusharm v. Nationwide Ins. Co.,* 47 F. Supp. 2d 514, 520 (D. Vt. 1999). The decisions from other jurisdictions are of doubtful value. At the same time, our consideration of such decisions convince this court that no clear majority rule has emerged. See *Gonzales v. Millers Cas. Ins. Co. of Texas,* 923 F.2d 1417, 1421 (10th Cir. 1991). Cases denying UIM benefits under circumstances similar to our case are collected at 3 Widiss, *Uninsured and Underinsured Motorist Insurance* § 35.5 n.7; and Annot., 24 A.L.R.4th 13. Cases permitting

UIM benefits under similar circumstances are collected at 3 Widiss, § 3.5 n.3, 4; 24 A.L.R.4th, 15.

*State Farm Mut. Auto. Ins. Co. v. Messinger*, 232 Cal. App. 3d 508, 283 Cal. Rptr. 493 (1991), denied UIM benefits when the tortfeasor's limits were equal to the UIM claimants limits. In California, a UIM vehicle was defined as a "motor vehicle that is an insured motor vehicle but insured for an amount that is less than the uninsured motorist limits carried on the motor vehicle of the injured person." 232 Cal. App. 3d at 513. Under this language, the court had no difficulty concluding that no UIM benefits were required: "[The tortfeasor's] car was insured for an amount equal to the uninsured/underinsured coverage the [victims] carried, and therefore not 'an amount less than the uninsured/[underinsured] motorist limits carried' by the [victims]." 232 Cal. App. 3d at 514.

We find the language construed by *Messinger* to be substantially similar to the Kansas statutory language we construe in this case. The California language requires a comparison between the "amount" of the tortfeasor's liability coverage to the "limits" of the insured's policy. Under these circumstances, *Messinger* found that UIM coverage was not applicable when the limits on the face of the policies were equal for both the tortfeasor and the insured. Likewise, the plain language in the Kansas statute requires a similar comparison to the limits of the insured's UIM policy.

*Messinger* is helpful in identifying the two opposing views present in the controversy we now consider:

"One view focuses on providing coverage to the accident victim for all damages that go uncompensated after the tortfeasor has paid over its limits. (Widiss, *supra*, at § 32.2.) Termed 'broad coverage,' this view adopts the belief that underinsured motorist coverage is not merely a stop-gap measure to cure the deficiencies of existing uninsured schemes, but is intended to indemnify injured parties for uncompensated damages. [Citation omitted.] The 'broad coverage' view defines a tortfeasor as underinsured whenever his available liability insurance proceeds are less than the injured party's actual damages. 'Broad coverage' seeks to provide full indemnification.

"The second or 'narrow coverage' view focuses on placing the insured in the position he or she would have been in if the underinsured motorist had had liability coverage equal to the insured's underinsured motorist limits. Under this view, the purpose of underinsurance is only to fill the vacuum left by the tradi-

tional uninsured motorist coverage. This view denies any underinsurance coverage to the insured if the tortfeasor's liability limits are equal to or greater than the insured's underinsured coverage. [Citation omitted.]" 232 Cal. App. 3d at 520-21.

Farm Bureau relies upon *Messinger* in arguing that it is "self-evident" that "K.S.A. 40-284(b), which requires comparison of the tortfeasor's limits with the insured's UIM limits, is a 'narrow coverage' UIM statute." We agree and conclude that *Cummings* correctly interpreted the provisions of K.S.A. 40-284(b). The plain and unambiguous language of K.S.A. 40-284(b) applies and results in a denial of coverage in this case. We are not at liberty to rewrite the statute to provide otherwise nor may we interpret the statute to reach the same result. If the result reached in this case is to be changed, it must be done by the legislature.

Halsey cites a number of cases from other jurisdictions. We do not find the cases cited by Halsey to be persuasive. We emphasize again that we are primarily faced with the interpretation of the plain and unambiguous language of the Kansas UIM statute, K.S.A. 40-284(b). *State Farm Mut. Auto. Ins. v. Valencia,* 120 N.M. 662, 905 P.2d 202 (Ct. App. 1995), supports Halsey's position. However, *Valencia* rests in part on the finding of a "legislative intent in enacting legislation to protect injured motorists in multiple-claimant situations." 120 N.M. at 665. No such legislative intent is found in Kansas.

*Butler v. MFA Mutual Ins. Co.,* 356 So. 2d 1129 (La. App. 1978), also appears to support Halsey's position. However, the session law cited by *Butler* does not refer to "limit," but rather "coverage." 1972 La. Acts 137 ("For the purposes of this coverage the term 'uninsured motor vehicle' shall, subject to the terms and conditions of such coverage, also be deemed to include an insured motor vehicle when the automobile liability insurance coverage on such vehicle is less than the uninsured motorist coverage carried by an insured.").

Halsey cites *Wilkie v. Auto-Owners Ins. Co.,* 245 Mich. App. 521, 629 N.W.2d 86 (2001). However, in Michigan, UIM benefits are not required by statute, and the UIM benefits at issue were, therefore, based upon policy language. 245 Mich. App. at 524. The

Michigan court prefaced its analysis by affirming the reasonable expectations doctrine, 245 Mich. App. at 525, which is not the law in Kansas, *Liggatt v. Employers Mut. Casualty Co.*, 273 Kan. 915 Syl. ¶ 5, 46 P.3d 1120 (2002).

Halsey's citation of *State Farm Mut. Auto. Ins. Co. v. Diem*, 358 So. 2d 39, 41 (Fla. Dist. App. 1978), is inapposite because Florida's statutory language applicable therein explicitly made the UIM benefits "excess over" benefits.

We conclude that the plain and unambiguous language of K.S.A. 40-284(b) requires a limits-to-limits comparison in determinations as to whether UIM coverage exists. In those cases where the UIM coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle, UIM coverage exists. However, in those cases such as the case we now consider, where the UIM coverage equals or does not exceed such limits no UIM coverage exists.

Coverage under Farm Bureau Policy

Having concluded that K.S.A. 40-284(b) precludes UIM coverage in the circumstances of this case, we consider whether the language of Farm Bureau's policy provides such coverage. In order for Halsey to prevail, he must establish that his policy provides greater benefits than would be provided under K.S.A. 40-284(b). Halsey's policy with Farm Bureau used the following language to provide the UIM benefits required at K.S.A. 40-284(b):

"We will pay damages which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle or an underinsured motor vehicle because of bodily injury;
(1) Sustained by an insured person; and
(2) Caused by an accident.
"The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle or the underinsured motor vehicle. We will pay damages under this coverage caused by an accident with an underinsured motor vehicle, only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment judgments or settlements."

The policy provides for the following definition:

"Underinsured motor vehicle means a land motor vehicle, trailer or semi-trailer of any type to which one or more bodily injury liability bonds or policies apply at the time of the accident but their limits for bodily injury liability is less than the limit of uninsured motorists coverage provided in this policy."

Last, the policy contains the following limitation:

"Coverage for losses caused by an underinsured motorist shall be limited to the difference between the underinsured motorist coverage limits provided in this part and the coverage limits provided in all applicable bodily injury bonds or policies."

The policy language explicitly requires the UIM benefits to be limited by the limits of the tortfeasor's policy. The policy language specifies that the relevant limits are the ones provided in the policy. We conclude that Halsey's policy with Farm Bureau reflects the provisions of K.S.A. 40-284(b) and provides no UIM benefits beyond those required by the statute.

Reversed and remanded with directions to the district court to enter judgment for Farm Bureau.