(135 P.3d 767)
No. 94,906

TIMOTHY W. RICHERT, *Appellant*, v. SHAWN D. McHONE, LORETTA McHONE, HARLIN C. GUYNN, SHERRI GUYNN, and AMERICAN FAMILY MUTUAL INSURANCE COMPANY, *Appellees*.

Opinion filed March 31, 2006.

*Matthew L. Bretz*, of Bretz Law Offices, of Hutchinson, for appellant.

*Dustin J. Denning*, of Clark, Mize & Linville, Chartered, of Salina, for appellees.

Before RULON, C.J., JOHNSON and HILL, JJ.

JOHNSON, J.: Timothy W. Richert appeals the summary judgment granted to his insurer, American Family Mutual Insurance Company (American Family), on Richert's claim for uninsured motorists coverage (UM) benefits. Richert contends that his automobile insurance policy provided broader coverage than the minimum required by Kansas statutes, entitling him to collect UM benefits in addition to the bodily injury liability payments received from the negligent driver's policy. We disagree and affirm the district court.

The undisputed facts are straightforward. Richert, while operating his own vehicle, collided with a 1987 Chevrolet Blazer (Blazer) driven by Shawn D. McHone. McHone did not own the Blazer; the vehicle was titled to his mother and two other persons. At the time of the accident, the Blazer's owners did not have bodily injury liability insurance in effect. However, McHone had an automobile policy listing his own vehicle, and that policy extended McHone's bodily injury liability protection to cover his operation and use of the Blazer. The liability limits of McHone's policy were $100,000 per person and $300,000 per occurrence (100/300).

Richert's automobile policy with American Family also carried 100/300 limits which were applicable to both the UM and underinsured motorists (UIM) coverages. Apparently, Richert is the only claimant and the $300,000 per occurrence liability limit is not involved in this appeal. Also, there does not appear to be a dispute as to whether Richert's damages exceeded the tortfeasor's per person liability limit of $100,000.

Richert sued McHone and the owners. Subsequently, American Family was added as a defendant upon a claim that it owed UM benefits to Richert. Richert settled with McHone for the tortfea-

sor's $100,000 per person bodily injury liability limit. The vehicle owners defaulted. In a well-reasoned opinion, the district court granted American Family's motion for summary judgment, essentially holding that under our prior decision in *State Farm Mut. Auto. Ins. Co. v. Cummings*, 13 Kan. App. 2d 630, 778 P.2d 370, *rev. denied* 245 Kan. 786 (1989), the Blazer could not be considered "uninsured" at the time of the accident because its driver, McHone, had liability insurance which covered the Blazer.

On appeal, Richert, referring to the Blazer as "the offending vehicle," states the issue as, "Whether the language of American Family's uninsured motorist policy provides UM coverage when the offending vehicle was uninsured, even though the driver of the offending vehicle had insurance on a different vehicle?"

## STANDARDS OF REVIEW

A summary judgment entered upon undisputed facts is reviewed de novo. *Roy v. Young*, 278 Kan. 244, 247, 93 P.3d 712 (2004). To the extent we are called upon to interpret an insurance contract or interpret statutory provisions, our review is likewise de novo and unlimited. See *Cooper v. Werholtz*, 277 Kan. 250, 252, 83 P.3d 1212 (2004) (statutory interpretation a question of law subject to unlimited appellate review); *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 763, 27 P.3d 1 (2001) (interpretation and legal effect of written instruments are matters of law over which appellate courts exercise unlimited review).

## STATE FARM vs. CUMMINGS

The *Cummings* facts are strikingly similar. *Cummings* involved an automobile accident where the negligent driver did not own the vehicle she was driving. The vehicle owner was uninsured, but the driver was insured for bodily injury liability through a separate policy which covered the driver's operation of the nonowned vehicle. The injured claimants were covered by a State Farm policy providing UM and UIM coverage. The tortfeasor's bodily injury liability limits were identical to State Farm's UM and UIM limits. The injured parties settled with the tortfeasor's insurance carrier for amounts less than their actual damages because of inadequate

policy limits. State Farm initiated an action to determine whether it would be responsible to the claimants for UM or UIM coverage.

With respect to the UM issue, the *Cummings* court declared that the statutory provisions governing uninsured motorists coverage in Kansas, K.S.A. 40-284 *et seq.*, are mandatory and automatically incorporated into every policy written in this state; any attempt by an insurer to diminish the statutorily mandated coverage is void. 13 Kan. App. 2d 630, Syl. ¶ 1. However, where not in conflict with the statutory mandates, the policy provisions are controlling. 13 Kan. App. 2d 630, Syl. ¶ 2. The courts will not permit a dilution or diminution of the statutorily required UM coverage, but neither will the courts extend an insurance carrier's risk or extent of liability beyond that for which it has bargained. 13 Kan. App. 2d 630, Syl. ¶ 3.

The *Cummings* opinion set forth the applicable policy language of the State Farm UM coverage as follows:

" 'We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle*.

" '*Uninsured Motor Vehicle*—means:

" '1. an "uninsured" land motor vehicle, the ownership, maintenance or use of which is:

a. not insured or bonded for bodily injury liability at the time of the accident.' " 13 Kan. App. 2d at 633.

Although the *Cummings* opinion does not present a detailed analysis of the State Farm policy language, it had to implicitly find that the UM provisions did not conflict with the statutory mandate. Its ultimate holding was:

"Where either the owner or the driver of a vehicle is covered by the minimum insurance limits required by law, the vehicle is not 'uninsured' within the meaning of the Kansas uninsured motorist statutes, and the injured parties are not permitted access to the uninsured motorist coverage in their own policies." 13 Kan. App. 2d 630, Syl. ¶ 4.

Although the portion of the *Cummings*' opinion addressing UIM coverage has been altered by subsequent decisions, its holdings with respect to UM coverage remain good law. Richert does not

challenge the efficacy of *Cummings'* legal pronouncements, but rather he attempts to factually distinguish the precedent based upon the differing UM policy language employed by American Family.

*POLICY INTERPRETATION*

Richert focuses entirely on a critical analysis of the following definition in American Family's policy:

"3. **Uninsured motor vehicle** means a **motor vehicle** which is:
a. Not insured by a **bodily injury** liability bond or policy at the time of the accident."

Richert contrasts that definition with the State Farm policy applicable in *Cummings* which referred to the "ownership, maintenance or use" of the other vehicle. 13 Kan. App. 2d at 633. He contends that the State Farm uninsured motor vehicle definition narrowed the UM coverage to the minimum required by statute, both of which require a showing that (1) the ownership of the other vehicle was not insured; (2) the maintenance of the other vehicle was not insured; and (3) the use of the other vehicle was not insured. The UM claimant in *Cummings* could not meet State Farm's definitional requirements because the negligent driver's separate liability policy insured the other vehicle's "use."

To the contrary, Richert argues that American Family's policy definition only required him to show that the offending vehicle was not specifically covered by an insurance policy, whether the use of the vehicle was insured is of no consequence. His theory is that the omission of the "maintenance and use" language in American Family's policy manifested an intent to provide broader UM coverage than is statutorily mandated, and correspondingly broader than was provided by State Farm. Because American Family's policy broadens, rather than diminishes the statutorily required UM coverage, the policy controls the parties' respective rights. See *Cummings*, 13 Kan. App. 2d 630, Syl. ¶ 2.

Richert reminds us that an insurance policy provision is tested by what a reasonably prudent insured would understand the language to mean, not by what the insurer intended the language to mean. See *Universal Underwriters Inc. Co. v. Hill*, 24 Kan. App.

2d 943, Syl. ¶ 4, 955 P.2d 1333 (1998). He maintains that we must apply the plain and unambiguous policy provision as written and refrain from making a different contract for the parties. See *Saucedo v. Winger*, 22 Kan. App. 2d 259, Syl. ¶ 2, 915 P.2d 129 (1996). However, Richert omits any reference to the overarching methodology to be employed in construing the policy. "The meaning of a written agreement should always be ascertained by a consideration of all pertinent provisions and not by the critical analysis of a single or isolated provision." *Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, Syl. ¶ 3, 961 P.2d 1213 (1998). See also *AT&SF Ry. Co. v. Stonewall Ins. Co.*, 275 Kan. 698, Syl. ¶ 3, 71 P.3d 1097 (2003) (effect must be given to all pertinent provisions of an insurance policy construed together, rather than in isolation). Richert fails to place the policy definition in the context of the whole policy.

### Uninsured Motor Vehicle Definition

Nevertheless, even if we were to look solely at American Family's uninsured motorist definition, we do not perceive that the language employed yields an unambiguous provision. The mere use of the term, "uninsured motor vehicle," suggests an ambiguity by intimating that an inanimate object is amenable to being independently protected against bodily injury claims. Richert punctuates this misconception by anthropomorphizing the Blazer as the "offending vehicle" which was "uninsured."

A vehicle, by itself, is incapable of being offensive and incapable of obtaining or choosing not to obtain bodily injury liability insurance. A vehicle possesses no cognition. It cannot independently owe or breach a duty of care nor can it be held legally liable for the claimant's bodily injury; one does not sue the vehicle. In other words, bodily injury liability coverage protects the living, breathing persons whose negligence caused the vehicle to injure another. It is inaccurate to say that a vehicle is insured or uninsured; the negligent person is either insured or uninsured. Perhaps that is why the coverage is called uninsured *motorists*, rather than uninsured *vehicles* coverage. *Cummings* hinted at this distinction when it said: "Since [the driver] was covered by a liability insurance policy, it follows that the vehicle itself was also covered and was not an 'un-

insured vehicle' within the meaning of the policy." 13 Kan. App. 2d at 635.

A review of the bodily injury liability provisions of the American Family policy in the record corroborates our proposition that it is not the vehicle which is insured. The policy specifically excludes bodily injury liability coverage for "[a]ny person, other than a relative, using [the] insured car without [the insured's] express or implied consent." Therefore, even if the owners had possessed a policy specifically listing the Blazer as an "insured motor vehicle," Richert could not have collected under that policy for his bodily injuries caused by the negligent operation of the vehicle by a car thief. In Richert's parlance, the "offending vehicle" would have been "uninsured," even though it was described on an insurance policy.

Therefore, we reject Richert's attempt to distinguish American Family's uninsured motor vehicle definition from that involved in *Cummings*. At the time of the accident, the negligent driver's automobile policy insured, up to its limits, the damages inflicted on Richert by the Blazer because of the driver's negligence. The Blazer was not an "uninsured motor vehicle" under the American Family policy.

### Statement of UM Coverage

Richert ignores the policy language which sets forth American Family's obligations under the UM coverage. The provision states:

"**We** will pay damages for **bodily injury** which an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** or an **underinsured motor vehicle**. The **bodily injury** must be sustained by an **insured person** and must be caused by accident and arise out of the **use** of the **uninsured motor vehicle** or the **underinsured motor vehicle**."

The boldfacing of a term indicates that it is defined in the policy. For purposes of the entire policy, the term "use" is defined as "ownership, maintenance, or use." For UM and UIM purposes: "uninsured motor vehicle" means a vehicle which is "[n]ot insured by a bodily injury liability bond or policy at the time of the accident"; and "underinsured motor vehicle means a motor vehicle which is insured by a liability bond or policy at the time of the

accident which provides bodily injury liability limits less than the limits of liability of this Underinsured Motorists Protection."

We believe a reasonable insured would understand from the policy that if he or she is injured in an accident for which the owner or operator of the other vehicle was at fault, but where there is no bodily injury liability coverage available to pay for the insured's injuries, the insured may claim uninsured motorists benefits. However, if there is bodily injury liability coverage available from the owner or operator of the other vehicle, the applicable claim is for underinsured motorists protection, not uninsured motorists coverage.

Here, we are presented with an underinsured scenario. A bodily injury liability policy covered Richert's damages, but the tortfeasor's liability limits were inadequate, *i.e.*, he was underinsured. Unquestionably, Richert could have had a UIM claim under his American Family policy, but for the fact that he purchased limits of liability for his own policy that did not exceed those of the tortfeasor. See *Halsey v. Farm Bureau Mut. Ins. Co.*, 275 Kan. 129, Syl. ¶ 4, 61 P.3d 691 (2003) ("where the UIM coverage equals or does not exceed the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle, there is no UIM coverage"). We cannot accept that a reasonable insured would believe that an underinsured claim somehow transforms into an uninsured claim simply because the insured chose inadequate UIM limits on his own policy.

### UM Limits of Liability

Even if the policy could be read to permit Richert to file a UM claim, other provisions would effectively preclude his collecting or keeping any additional monies. Under the portion of the policy describing the UM and UIM coverage, Part III, a limits of liability subsection contains the following language:

"The limits of liability of this coverage will be reduced by:

1. A payment made for the same damages by the *owner or operator* of the **uninsured motor vehicle** or organization which may be legally liable." (Emphasis added.)

Richert received a $100,000 payment from the insurer of the legally liable operator. The payment was to cover the same damages for which Richert was claiming UM benefits. Therefore, Richert's per person liability limit of $100,000 would be reduced by the $100,000 payment from the tortfeasor, resulting in a net UM liability limit of $0.

We do not believe American Family's limits of liability reduction provision violates *Cummings'* prohibition against a policy provision that diminishes or dilutes the statutorily mandated minimum coverage. The statute which mandates UM coverage also contains an anti-stacking provision, which provides:

"Coverage under the policy shall be limited to the extent that the total limits available cannot exceed the highest limits of any single applicable policy, regardless of the number of policies involved, persons covered, claims made, vehicles or premiums shown on the policy or premiums paid or vehicles involved in an accident." K.S.A. 40-284(d).

Thus, the legislative intent appears to be that a UM claimant can expect that the maximum insurance recovery he or she will receive for an accident is an amount equal to the limits of the one applicable policy which contains ·the highest limits. Here, that amount is $100,000 which Richert has already received. At oral argument, Richert conceded that if the owners had been insured with the same liability limits as the driver, 100/300, Richert would not have collected any more in bodily injury liability payments. Thus, it is counterintuitive to expect to stack UM limits on top of bodily injury limits, when neither bodily injury limits nor UM limits may be stacked.

### Insurer's Recovery Rights

In addition, Richert's policy invests his insurer with certain rights to recover policy benefits. Under Part VI, General Provisions, subparagraph 5, the policy includes the following language:

"b. When **we** pay damages under this policy to a person who also collects from another, the amount collected from the other shall be repaid to **us** to the extent of our payment."

If American Family were to pay Richert $100,000 in UM benefits, the foregoing provision would require Richert to repay Amer-

ican Family the $100,000 collected from the tortfeasor. Thus, Richert would not keep anything more than the maximum allowable recovery of $100,000.

## CONCLUSION

The Kansas uninsured motorist (UM) statutes, K.S.A. 40-284 *et seq.*, do not require an insurer to provide UM coverage for an insured's injuries which are sustained in an accident where either the owner or the driver of the other vehicle has a bodily injury liability insurance policy which covers the accident and which provides liability limits equal to or more than the minimum limits required by Kansas law. An insurance policy that defines an uninsured motor vehicle as a motor vehicle which is "[n]ot insured by a bodily injury liability bond or policy at the time of the accident" does not, by that definition alone, broaden or extend the policy's UM coverage beyond the minimum coverage mandated by statute.

Considering all pertinent provisions of Richert's American Family policy, giving effect to each provision without isolating any single provision, we are convinced that a reasonably prudent insured would understand that the uninsured motorists coverage is unavailable for the same damages covered by the negligent driver's bodily injury liability insurance policy and that the UM limits cannot be added to or stacked upon the recovery obtained from the tortfeasor.

Affirmed.