**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 14, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

NATALIE LONG, Individually, as
Heir at Law, and as Special
Administrator of the Estate of
CHARLES RHOTEN, JR., a Deceased
Minor, and as Parent and Natural
Guardian of JENNIFER RHOTEN, a
Minor,

        Plaintiff-Appellant,

    v.

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,

        Defendant-Appellee.

No. 07-3285

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. NO. 05-CV-1272-JTM)**

---

J. Darin Hayes (Deborah B. McIlhenny with him on the briefs), Hutton & Hutton,
Wichita, Kansas, for Appellant.

Marc A. Powell (Michael L. Baumberger with him on the brief) Powell, Brewer &
Reddick, LLP, Wichita, Kansas, for Appellee.

---

Before **MURPHY**, **SEYMOUR**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

In this diversity action based on Kansas law, Natalie Long seeks uninsured motorist benefits for her children, who were severely injured in a one-car accident. The uninsured teen driver, a friend of Long's children, did not have permission to drive the truck involved in the accident.

After the district court dismissed Long's claims against the vehicle owner's insurance company (St. Paul Fire and Marine Insurance), Long added her own insurance company (American Standard Insurance Company of Wisconsin) as a defendant. American Standard subsequently moved for summary judgment, lost, and decided to settle Long's claims. Despite the settlement, Long continues to seek additional uninsured motorist (UM) benefits from St. Paul.

On appeal, Long challenges the dismissal of her claims against St. Paul. She contends the Kansas uninsured motorist statute, Kan. Stat. Ann. § 40-284(a) (2007), requires the St. Paul policy to provide UM coverage for her children. She also asserts that even if the statute does not require UM coverage, the language of the St. Paul policy itself provides coverage. According to Long, because St. Paul denied liability coverage for the accident under the nonpermissive user provision in its policy, the pickup truck involved in the accident became an "uninsured vehicle," triggering the St. Paul UM coverage.

We conclude the truck was not an uninsured vehicle for purposes of the St. Paul policy, under either the Kansas Statute or the policy's relevant language.

Exercising jurisdiction under 28 U.S.C. § 1291, we therefore AFFIRM the district court's entry of judgment in favor of St. Paul.

## I. Background

### A.    The Accident

The accident occurred when a group of underage teenagers were joyriding in a pickup truck. The truck belonged to a construction company owned by the fifteen-year-old driver's father. Even though he was unlicensed, the driver's parents would occasionally allow him to drive the truck to and from school, work, and home. On the day of the accident, however, his parents specifically instructed him not to use the vehicle. St. Paul insured the truck under a general liability insurance policy it issued to the father's construction company.

At the time of the accident, Long's children, Charles Rhoten, Jr. (C.J.) and Jennifer Rhoten, were riding in the truck's bed. The driver lost control of the truck while turning onto a dirt road, and the vehicle swerved into a ditch and rolled, landing on its side. C.J. and Jennifer were ejected from the truck bed and suffered serious injuries. Tragically, C.J. died from his wounds.

### B.    The St. Paul Policy

The St. Paul policy insured the general liabilities of the construction company owned by the driver's father, including liabilities arising from the use of "covered autos." The policy's coverage limit for a single car accident was

$1,000,000. Neither party disputes the truck involved in the accident was a "covered auto" under the policy.

In the "Auto Liability Protection" portion of the policy, under a heading entitled "Who is Protected Under This Agreement," the policy stated:

> **Any permitted user.** Any person or organization to whom you've given permission to use a covered auto you own, rent, lease, hire or borrow is a protected person.

Aplt. App. at 65. Pursuant to this provision, St. Paul denied liability coverage for the driver's operation of the pickup truck on the day of the accident. In its letter to the teen driver's parents denying liability coverage, St. Paul stated, "[the driver] admits to have previously taken the keys to the vehicle he was driving . . . without the knowledge or permission of you, as his parents, or anyone associated with [the construction company]." Doc. 29, Amended Compl., Ex. B. Based on these facts, St. Paul concluded the driver "was not a permissive user and therefore no coverage is provided to him under the . . . automobile policy." *Id.*

But St. Paul's denial of liability coverage did not answer whether the policy's UM coverage was triggered by the accident or whether the coverage would be available to C.J. and Jennifer. Indeed, the denial of liability coverage undergirds Long's argument that the UM coverage applies.

In general, under the UM coverage, St. Paul agreed to "pay all sums any protected person is legally entitled to recover from the owner or driver of an uninsured or underinsured vehicle." Aplt. App. at 79. Both C.J. and Jennifer

-4-

were potentially "protected persons" under this UM coverage because they were riding in a "covered auto." *Id*. at 81. But even assuming C.J. and Jennifer were protected persons, the question remains whether the truck at issue was "uninsured" at the time of the accident.

The policy defines "uninsured vehicle" as including a vehicle "for which an insurance or bonding company denies coverage." *Id*. at 80. Thus, Long argues St. Paul's denial of liability coverage for the accident made the truck an uninsured vehicle such that C.J. and Jennifer could recover UM benefits.

### C. Legal Proceedings

Several months after the accident, Natalie Long—C.J. and Jennifer's mother—obtained counsel and sent a demand letter to St. Paul. St. Paul denied UM coverage.

In its letter denying UM coverage, St. Paul stated, "We have previously denied coverage responsibility for any claims against the liability of the driver of the vehicle at issue, because that person was not a permitted driver . . . . However, that denial of coverage did not mean that the vehicle itself was an uninsured vehicle . . . ." Doc. 29, Amended Compl., Ex. H. St. Paul went on to explain that it was "not denying that there is coverage for this vehicle. We have denied coverage for the driver who caused the accident. Kansas law recognizes this difference." *Id*.

Long disagreed with St. Paul's interpretation of Kansas law, as well as its interpretation of the policy's UM provisions, and filed suit. In due course, Long moved for summary judgment, arguing Kansas law mandated UM coverage for her children on the facts presented, and even if such coverage was not statutorily mandated, the St. Paul policy nevertheless provided it. *See Long v. St. Paul Fire & Marine Ins. Co.*, 423 F. Supp. 2d 1219 (D. Kan. 2006). The court denied Long's motion in relevant part,[1] stating: "Kansas law does not . . . requir[e] uninsured motorist coverage [under the St. Paul policy] in cases such as that presented here. Nor can the court accept plaintiff's argument . . . that the language of the policy nevertheless mandates coverage." *Id*. at 1227. After receiving this favorable ruling, St. Paul moved for judgment on the pleadings and dismissal. The court granted its motions.

Subsequently, Long added her own insurer, American Standard, as a defendant. Long's policy with American Standard included C.J. and Jennifer as insured parties, and Long sought UM coverage under that policy on behalf of her children. American Standard moved for summary judgment, but this time the district court ruled in favor of Long, holding that the American Standard policy did not unambiguously deny coverage under the facts of the case. *Long v. Am.*

---

[1] The district court partially granted Long's summary judgment motion, holding that St. Paul could not deny UM coverage based on a separate "unauthorized use" exclusion in the policy. *See Long*, 423 F. Supp. 2d at 1225. Neither party appeals that ruling.

-6-

*Standard Ins. Co. of Wis.*, 483 F. Supp. 2d 1099, 1103 (D. Kan. 2007). In light of this ruling, American Standard opted to settle Long's claim, and paid out the full extent of her policy's UM coverage—$100,000.

Despite this recovery, Long appeals, claiming the district court erred in granting judgment on the pleadings and dismissing her claims against St. Paul.[2]

## II. Analysis

We review the district court's grant of judgment on the pleadings and its dismissal of Long's claims under the same de novo standard. *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223 (10th Cir. 2009). We assume Long's allegations are true and ask whether the pleadings state a claim for relief that is facially plausible, not merely speculative. *Id*. Because this is a diversity case, we must "ascertain and apply the state law" to determine the plausibility of Long's claims. *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1103 (10th Cir. 2009) (quoting *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665 (10th Cir. 2007)). Here,

---

[2] In addition to appealing the dismissal of her claims against St. Paul, Long also appeals the district court's denial of her motion for summary judgment on those claims. In general, "the denial of a motion for summary judgment is not a final order and is therefore usually not appealable." *Utah Animal Rights Coal. v. Salt Lake County*, 566 F.3d 1236, 1239 n.1 (10th Cir. 2009). But once the district court enters a final order, its earlier interlocutory orders merge into the final judgment and are reviewable on appeal. *See McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1104 (10th Cir. 2002). Here, the final order at issue granted St. Paul's motion for judgment on the pleadings and its motion to dismiss. Because we conclude this final order correctly applied governing Kansas law, we necessarily find that the court's previous order denying summary judgment for Long was proper, and we decline to review that order separately.

the relevant state law—the law of Kansas—requires us to analyze the case using a two-stage inquiry.

First, we ask whether the Kansas uninsured motorist statute mandates coverage under the facts presented. If so, the case ends there—"[t]he provisions of the statute are to be considered a part of every automobile policy in this state." *State Farm Mut. Auto. Ins. Co. v. Cummings*, 778 P.2d 370, 373 (Kan. Ct. App. 1989), *abrogated on other grounds*, *Cashman ex rel. Cashman v. Cherry*, 13 P.3d 1265 (Kan. 2000). But if the Kansas statute is inapplicable, we must proceed to an analysis of the St. Paul policy itself: "to the extent [the policy] does not conflict with or attempt to diminish or omit the statutorily mandated coverage, it would be controlling as between the parties." *Id*.; *see also Halsey v. Farm Bureau Mut. Ins. Co.*, 61 P.3d 691, 695 (Kan. 2003) (employing the two-stage approach).

### A.    *The Kansas UM Statute*

Kansas law requires car insurance to protect against accidents caused by uninsured motorists:

> No automobile liability insurance policy . . . shall be delivered or issued [in Kansas] . . . unless the policy contains . . . a provision . . . in such automobile liability insurance policy sold to the *named insured for payment of part or all sums which the insured or the insured's legal representative shall be legally entitled to recover as damages from the uninsured owner or operator of a motor vehicle . . . .*

-8-

Kan. Stat. Ann. § 40-284(a) (emphasis added).  According to the Kansas Supreme Court, "[t]he purpose of K.S.A. 40-284 is to provide the individual who is covered by the standard automobile liability policy with a right against his or her own insurer equal to that the insured would have against the uninsured . . . tortfeasor."  *O'Donoghue v. Farm Bureau Mut. Ins. Co.*, 66 P.3d 822, 828 (Kan. 2003) (quoting *Rich v. Farm Bureau Mut. Ins. Co.*, 824 P.2d 955, 959 (Kan. 1992)).

Long argues the statute must be liberally construed in favor of coverage and should be read to require St. Paul to cover her children's injuries.  Some Kansas cases appear to support this contention since "the uninsured and underinsured motorist statutes should be liberally construed to provide broad protection to the insured."  *Jones v. Auto. Club Inter-Ins. Exch.*, 981 P.2d 767, 769 (Kan. Ct. App. 1999); *see also Rich*, 824 P.2d at 959 ("The purpose of the legislation . . . is to fill the gap inherent in motor vehicle financial responsibility and compulsory insurance legislation.  This coverage is intended to provide recompense to innocent persons . . . .").  But this is a general statement of policy, and must yield to specific statutory requirements.

As an initial matter, § 40-284(a) does not require that a *tortfeasor's* insurance policy protect an innocent accident victim—it only requires that the *injured person's* policy provide UM coverage.  Indeed, the language of § 40-284(a) mandates UM coverage only "in such automobile insurance policy *sold to*

*the named insured*." (emphasis added). We therefore look not to the St. Paul policy covering the pickup truck, but to the American Standard policy that insured Long and her children from injuries caused by uninsured motorists. The district court concluded that unlike the St. Paul Policy—which, under the facts of this case, clearly "excluded coverage for non-permissive users"—the American Standard policy did not unambiguously deny coverage for Long's children. *See Long*, 483 F. Supp. 2d at 1102–03. Of course, whether the Kansas UM statute or the relevant policy language *mandated* coverage under the American Standard policy is a legal question not before us—that issue has been settled by the parties. But at the very least, Long's children recovered benefits from their own insurer to bridge the gap in coverage left by the St. Paul permissive user exclusion. The purpose of § 40-284(a) therefore appears to have been satisfied in this case.

Moreover, Kansas courts have not construed the statute to mandate that a vehicle owner's insurance policy provide UM coverage for nonpermissive users of the owner's insured vehicles or passengers of nonpermissive users.[3] The

---

[3] Again, this says nothing regarding the coverage potentially provided by the *passenger's* automobile insurance policy. As one treatise has noted, "[p]ersons who are either named insureds or family members residing with a named insured . . . are afforded relatively comprehensive protection by the provisions used in most uninsured motorist insurance coverages." 1 *Alan I. Widiss & Jeffrey E. Thomas, Uninsured and Underinsured Motorist Insurance* § 4.2 at 69 (Rev. 3d ed. 2005). Thus, UM coverage is generally available when named insureds are "operating or are passengers in a motor vehicle, as well as when they are engaged in any other activity such as walking, riding a bicycle,

(continued...)

-10-

Kansas Supreme Court faced an insurance dispute similar to this one in *Farmers Insurance Co. v. Schiller*, 597 P.2d 238 (Kan. 1979). In that case, the owner of a pickup truck, who was arranging to sell the truck, lent the vehicle to a potential buyer for the evening, instructing that only the buyer was allowed to drive. That night, the buyer—without the owner's permission—turned the keys over to Schiller and a friend.

It is unclear who drove the truck that night—Schiller or the friend—but someone wrecked it, and Schiller sustained personal injuries. The owner's insurer, Farmers, filed an action for declaratory judgment to determine whether it was required to cover Schiller, though neither he nor his friend had permission to drive the truck.

Schiller argued that because Farmers denied him personal injury benefits, § 40-284(a) mandated that he receive UM coverage. The Kansas Supreme Court disagreed. It held, "[t]he uninsured motorist statute was not enacted to provide coverage for everyone. . . . [A] guest passenger of [an] unauthorized user, which passenger does not fall within the definition of 'insured' contained in the [vehicle owner's] policy, is not within the coverage mandated by the uninsured motorist statute . . . ." *Schiller*, 597 P.2d at 243.

---

[3](...continued)
driving a hay wagon, or even sitting on a front porch." *Id*. at 70.

In a later case, *Hilyard v. Clearwater*, 729 P.2d 1195 (Kan. 1986), the Kansas Supreme Court reaffirmed that the mere denial of general insurance coverage does not trigger the UM statute. There, an insurance company denied liability benefits for the family members of several insured parties pursuant to a policy's household exclusion. The plaintiffs argued this denial of coverage triggered statutorily-required UM benefits. But the Kansas Supreme Court held that § 40-284(a) did not mandate UM coverage under those facts: "The statute does not contemplate a situation where the 'uninsured owner or operator' is the owner of an automobile liability insurance policy." *Hilyard*, 729 P.2d at 1200.

Long argues *Hilyard* has little precedential value because the Kansas Court of Appeals purported to limit *Hilyard* to its particular facts. *See Cummings*, 778 P.2d at 375. Long's argument is incorrect for several reasons. First, as a federal court sitting in diversity, we apply the law as set forth by the relevant state's highest court. The decisions of lower state courts, while persuasive, are not dispositive. *See Wade*, 483 F.3d at 665–66.

Second, although *Cummings* revisited the holding of *Hilyard*, it ultimately arrived at a similar conclusion: "[A]n offending vehicle is not to be considered as 'uninsured' when the driver [or owner] of that vehicle is covered by the requisite minimum liability coverage." *Cummings*, 778 P.2d at 376; *see also id.* at 374 (if "either the owner or driver" of an automobile has purchased minimum coverage, the "vehicle . . . is not 'uninsured'"). And *Cummings* never suggested *Hilyard*

-12-

was incorrectly decided. Unlike *Cummings*, *Hilyard* concerned the operation of a valid insurance policy exclusion; the Kansas Supreme Court denied UM coverage in *Hilyard* because to do otherwise would have "emasculate[d] the . . . exclusion clause in the policy." *Cummings*, 778 P.2d at 375. In contrast, no policy exclusions were implicated in *Cummings*—the only question was the definition of an "uninsured" vehicle. For precisely this reason, the court in *Cummings* found *Hilyard* did not apply to the facts of that case.[4]

*Schiller* and *Hilyard* thus establish that the Kansas statute does not mandate UM coverage for Long's children under the St. Paul policy. The teen driver here, like the driver in *Schiller*, was not permitted to drive the truck at the time of the accident, and Long does not argue otherwise. Consequently, as "guest passenger[s] of the unauthorized user," Long's children are not entitled to UM benefits from St. Paul under § 40-284(a). *Schiller*, 597 P.2d at 243.

Moreover, as in *Hilyard*, the mere fact that St. Paul denied liability coverage to the driver does not mean it is simultaneously required to provide UM coverage for passengers. The teen driver—but for the nonpermissive user provision in the St. Paul policy—was insured under that same policy. As the

---

[4] A more recent case from the Kansas Court of Appeals cited *Hilyard* for the same proposition of law we apply here: "The [uninsured motorist] statute does not cover a situation where the uninsured owner or operator owns an automobile liability policy." *Loveless v. Am. Family Mut. Ins. Co.*, 24 P.3d 198, 199 (Kan. Ct. App. 2001). Clearly, the Kansas Court of Appeals does not consider *Hilyard* to be bad law, however particular its facts may be.

Kansas Supreme Court stated, the UM statute "does not contemplate" the situation at hand—where the driver is insured but, because of a legitimate policy exclusion, the claimant characterizes him as uninsured to gain access to statutory UM benefits. *Hilyard*, 729 P.2d at 1200.

The Kansas legislature has not modified the UM statute to abrogate the *Schiller* and *Hilyard* decisions, and we must presume it agrees with their holdings. *Halsey*, 61 P.3d at 697 (quoting *In re Adoption of B.M.W.*, 2 P.3d 159, 166 (Kan. 2000)). We therefore conclude that § 40-284(a) does not mandate St. Paul to provide UM benefits to C.J. and Jennifer

### B.    The Policy Language

Because we conclude § 40-284(a) does not mandate UM coverage under the facts presented, we must advance to the second stage of the two-part UM analysis: an examination of the St. Paul policy itself.

Long asserts that even if the Kansas UM statute is inapplicable, "the St. Paul policy afforded coverage greater than the statutorily mandated minimum coverage." Aplt. Br. at 16–17. This argument proceeds in three parts: (1) St. Paul, an insurance company, denied coverage for the accident under the nonpermissive user exclusion, (2) the policy broadly defines "uninsured vehicle" as one "for which an insurance or bonding company denies coverage," and (3) therefore, the St. Paul UM coverage is applicable to this case. The crux of the argument is part two—St. Paul's definition of "uninsured vehicle."

Under Kansas law, we must interpret the St. Paul policy to "give effect to the intention of the parties." *Brumley v. Lee*, 963 P.2d 1224, 1226 (Kan. 1998). Though we construe ambiguous terms against St. Paul as the drafter of the policy, *id.*, we must not find an ambiguity if a "reasonable construction" of the policy—i.e., "one that makes the contract fair, customary, and such as prudent persons would intend"—leads us to a single interpretation. *Marquis v. State Farm Fire & Cas. Co.*, 961 P.2d 1213, 1219 (Kan. 1998). Moreover, a reasonable construction of the policy must be based on a reading of *all* pertinent policy provisions; we must avoid a critical analysis of a single, isolated provision. *Id.* (citing *Arnold v. S.J.L. of Kan. Corp.*, 822 P.2d 64, 67 (Kan. 1991)). Ultimately, our task is to determine "what a reasonably prudent insured would understand the language to mean." *Universal Underwriters Ins. Co. v. Hill*, 955 P.2d 1333, 1337–38 (Kan. Ct. App. 1998); *see also Am. Family Mut. Ins. Co. v. Wilkins*, 179 P.3d 1104, 1109–10 (Kan. 2008).

Here, a reasonably prudent insured—i.e., someone standing in the shoes of the pickup truck owner insured by St. Paul—would not understand the policy to cover passengers of a nonpermissive driver.

First and foremost, the policy's Auto Liability Protection section explicitly contained a nonpermissive user exclusion. Only those with "permission to use a covered auto" were protected under the policy. No one disputes the driver had been forbidden to drive the truck on the day of the accident, and a reasonably

prudent insured would not expect to pay premiums to cover injuries sustained by a joyrider and his friends. Furthermore, because the purpose of UM coverage is to provide an innocent victim a "right against his or her *own insurer*," a reasonable insured would not expect St. Paul to foot the bill for a stranger to the insurance policy. *See O'Donoghue*, 66 P.3d at 828 (emphasis added). To construe the policy to provide such coverage "would effectively nullify" the nonpermissive user clause in the St. Paul policy, *Hilyard*, 729 P.2d at 1200, and unnaturally elevate the provision defining "uninsured vehicle" to override the policy's other relevant language, *see Marquis*, 961 P.2d at 1219.

Second, Long's construction is at odds with the internal logic of the policy. In the policy, St. Paul defines itself as "us" or "we." Thus, in the UM portion of the policy, St. Paul acknowledges, "[*w*]*e'll* pay all sums any protected person is legally entitled to recover." Aplt. App. at 79 (emphasis added). Yet the single provision upon which Long rests her argument defines an uninsured vehicle as one "for which an *insurance or bonding company* denies coverage." *Id*. at 80 (emphasis added). No doubt, St. Paul is an insurance company. But the defined use of the term "we" throughout the policy suggests that an uninsured vehicle is one for which an insurance company other than St. Paul denies coverage.

Third, Long's argument contradicts itself. She asserts that the pickup truck was a "covered auto" under the St. Paul policy—allowing her to recover UM benefits for her children's injuries—and yet was also an uninsured vehicle within

-16-

the meaning of the same policy, such that its UM provisions were triggered. As one court noted in construing similar terms under Kansas law, "[i]t seems anomalous that an 'insured' automobile could at the same time be an 'uninsured' automobile *under that same policy*." *Chance v. Farm Bureau Mut. Ins. Co.*, 756 F. Supp. 1440, 1444 (D. Kan. 1991) (emphasis added).

To avoid this contradiction, Long relies on *Richert v. McHone*, 135 P.3d 767 (Kan. Ct. App. 2006), a recent case from the Kansas Court of Appeals. She argues the case requires UM coverage to be available to an injured person any time liability benefits are unavailable. She claims *Richert* "is a clear message that insurance carriers should be wary if they deny coverage to tort victims." Aplt. Br. at 23. But Long's reliance on that case is misplaced for two reasons. First, the facts and outcome of *Richert* actually support St. Paul's position, not Long's. Second, the Kansas Supreme Court's decision in *Schiller* suggests Long's interpretation of *Richert* is overbroad.

In *Richert*, the plaintiff was involved in a two-car accident. The other driver, McHone, carried an insurance policy that covered the accident, but the car he was driving was owned by his mother, who had failed to purchase car insurance. Though McHone's insurance company paid out its per-person limit for the accident, Richert sued his own insurance company to recover additional benefits under his policy's UM provisions. He claimed McHone's car was "uninsured" because its owner—McHone's mother—did not carry car insurance.

-17-

Richert's claim was not based upon § 40-284(a); rather, he argued his insurance policy "provided broader coverage than the minimum required by Kansas statutes." *Richert*, 135 P.3d at 768.

The court held that UM coverage was unavailable under Richert's policy because McHone, the *driver* of the purportedly uninsured vehicle, was insured. In doing so, the court refused to draw an artificial distinction between an insured driver and an insured vehicle: "bodily injury liability coverage protects the living, breathing persons whose negligence caused the vehicle to injure another. It is inaccurate to say that a vehicle is insured or uninsured; the negligent person is either insured or uninsured." *Id*. at 771.

Long ignores that the outcome in *Richert* was to deny coverage because the plaintiff's definition of "uninsured vehicle" in that case was too clever by half. She instead focuses on a passage in the opinion which states, "where there is no bodily injury liability coverage *available to pay for the insured's injuries*, the insured may claim uninsured motorists benefits." *Id*. (emphasis added). Long claims that, because there was no bodily injury coverage "available" to C.J. and Jennifer, the St. Paul policy must provide UM coverage.

But this reading of *Richert* conflicts with the holding in *Schiller*, where liability benefits would have been available to the claimant if the driver had permission to use the vehicle at the time of the accident. Yet the Kansas Supreme Court upheld the insurance company's denial of coverage under the relevant

policy language.  The court explained that under the policy at issue, "[i]nsurance coverage is not present . . . when the vehicle is being operated by a third party without the express or implied permission of the insured."  *Schiller*, 597 P.2d at 243.

In *Schiller*, as here, coverage was "available," but was denied pursuant to a valid clause in the relevant insurance policy.[5]  *Richert* thus does not affect *Schiller*, nor does it change our conclusion that a reasonable insured would not expect UM coverage to be available to Long under the St. Paul policy.[6]

_____

[5]  As noted above, C.J. and Jennifer were at least potentially covered by their *own* insurer as a matter of law.  After the district court determined that the specific language of the American Standard policy did not unambiguously deny UM coverage for Long's children, *Long*, 483 F. Supp. 2d at 1103, Long obtained recovery from American Standard through settlement.  Like the plaintiff in *Richert*, Long is seeking *additional* recovery from an insurance policy that contains a legitimate coverage limitation.

[6]  Two leading treatises support our interpretation of the St. Paul policy and the relevant Kansas case law.  One concludes that nonpermissive user clauses are often "upheld as [] reasonable coverage restriction[s]," and are often enforced when applied to a policy's UM coverage, absent "unusual situations" such as car jackings and other violent behavior by the nonpermissive user.  1 *Uninsured and Underinsured Motorist Insurance* § 5.6 at 311–12,  § 4.18 at 171–72 & n.35.  Another commentator states a general rule that, when an insurance policy contains a nonpermissive user exception, "a passenger in an automobile being operated without the permission of the owner is not an occupant of an insured automobile and cannot recover uninsured motorist coverage benefits under the owner's policy."  2 *Irvin E. Schermer & William Schermer, Automobile Liability Insurance 4th* § 22:3 (2008).

As a final note, our interpretation of the St. Paul policy makes sense from the standpoint of the bargain a reasonable insured would make in purchasing car insurance. A reasonable insured would likely refuse to pay additional policy premiums to protect nonpermissive users and their passengers. And if a reasonable insured would not make such a bargain, then the insurer has not been paid to bear the additional risk. As the Kansas Supreme Court stated, "to impose further liability would impose a risk upon the insurers that had not been bargained for and for which the insurer had not been compensated." *Halsey*, 61 P.3d at 696.

## III. Conclusion

For the foregoing reasons, we AFFIRM the decision of the district court dismissing Long's claims and granting judgment on the pleadings for St. Paul.